**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MARY BETH MOCK**
Madison, Indiana

ATTORNEY FOR APPELLEE:

**R. PATRICK MAGRATH**
Alcorn Goering & Sage, LLP
Madison, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE GUARDIANSHIP OF D.M.  )
  )
W.G.,  )
  )
   Appellant,  )
  )
    vs.  )  No. 39A01-1210-GU-463
  )
B.P.,  )
  )
   Appellee.  )

APPEAL FROM THE JEFFERSON CIRCUIT COURT
The Honorable Ted R. Todd, Judge
Cause No. 39C01-1203-GU-19

**May 21, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

W.G. ("Grandfather") appeals the trial court's termination of his guardianship over his granddaughter D.M. Grandfather raises two issues which we revise and restate as:

I.    Whether the trial court abused its discretion by terminating Grandfather's guardianship of D.M.; and

II.   Whether the trial court abused its discretion by awarding Mother immediate custody of D.M.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On March 14, 2012, Grandfather[1] filed an emergency petition for temporary guardianship of D.M., who was born on July 11, 2006. At that time, D.M.'s mother ("Mother") was incarcerated for maintaining a common nuisance and theft and D.M.'s father ("Father") was incarcerated for dealing in a controlled substance. The next day, the court appointed Grandfather as the temporary guardian of D.M. and ordered that Mother be notified of the grant of temporary guardianship and be entitled to move the court for a hearing. On May 15, 2012, the court entered an order appointing Grandfather as permanent guardian of D.M. and Voices for Children as guardian ad litem. On May 23, 2012, Mother was released from jail.

On June 20, 2012, Mother filed a motion to terminate guardianship and alleged that she was no longer incarcerated and was able to adequately provide for D.M. On July 13, 2012, Mother filed a motion to establish temporary visitation and for a report from the guardian ad litem.

---

[1] Grandfather is the maternal grandfather of D.M.

2

On September 11 and 18, 2012, the court held a hearing. Shelby Bear, the case manager for the Jefferson County Community Corrections, testified that she had seen a progression in Mother's behavior and growth, that Mother had not tested positive for any drugs, and that she believed that Mother was prepared to be a parent to D.M. Mother testified that she intended to move to Kentucky, was currently employed, was actively seeking employment closer to her new residence in Kentucky, and was prepared to be the proper parent that D.M. needs. Father testified that he believed that D.M. should be with Mother and that the pain pills that he was dealing were received from Grandfather. Mother's aunt, D.S., described her home in Kentucky and testified that she thought that Mother was prepared to be a parent again for D.M.

Pamela Moon, the guardian ad litem, testified and a report by her was admitted into evidence which ultimately recommended that Grandfather's guardianship be terminated and D.M. be returned to Mother. Moon's report indicated that D.M. had said that her Mother would not allow her to eat when she was hungry and that Moon had seen a picture of Mother's apartment before she was incarcerated and the cabinets had bungee cords on them to keep them closed. The report indicated that Mother had stated that the bungee cords were around the handles to keep D.M. from giving the food away to neighborhood kids and to keep the dog out of the cabinets. Moon also indicated that she believed some of D.M.'s answers appeared to be coached and not entirely genuine.

Elaine Robinson, D.M.'s therapist, testified that D.M. had stated that Mother would not give her food when she was hungry. Robinson did not think that D.M. was coached because the statement was very spontaneous. Robinson also testified that D.M.

3

said that Mother used drugs in front of her, was mean to little kids, and that Mother told her that she was going to knock out her teeth. Robinson did not believe that D.M. was coached in any way. Robinson recommended a therapeutic intervention. Robinson also indicated that she did not know Mother or Father at all.

Myra Crawley, the mother of Christopher Litzy, testified that Mother was living with Litzy and that she had concerns about Litzy being around small children because Litzy is extremely violent. Crawley also testified that Mother told her that the "she wasn't worried about any of the trouble that she was in" and that the first thing she was going to do was smoke a joint. Transcript at 90.

Grandfather's wife, E.G., testified that Mother was violent and has a "little bit of a sadistic side" and that D.M. is terrified of Mother. Id. at 98. E.G. testified that Mother said that E.G. would never see D.M. again. E.G. also testified that she saw D.M. attempt to shoplift and that D.M. told her: "Mommy did it." Id. at 116. Grandfather testified that he was concerned about D.M.'s growth and that when D.M. first entered his house, she reacted to food like she was starved to death. Grandfather also testified that he was afraid that Mother would harm D.M.

On September 18, 2012, the court terminated Grandfather's guardianship. The court's order states in part:

The Court hears evidence and finds as follows:

* * * * *

5.      [Mother] is no longer in jail, has resolved her legal issues, and is now on Community Corrections and has been granted a transfer to Kentucky so that she can live with her aunt in Carrollton, Kentucky.

4

6.     Shelby Bear with the Jefferson County Community Corrections Department testified [Mother] has passed multiple drug screens and has obtained employment.

7.     [Mother] and her aunt, [D.S.], testified concerning the size and adequacy of [D.S.'s] home in Kentucky.

8.     [Mother] testified to how much she loved her child and how much she misses her.

9.     The [Father] . . . has pled guilty to drug charges and has been sentenced to an eight (8) year executed sentence.

10.    [Father] testified that he desired that his daughter be with [Mother] and that he felt it was in his daughter's best interests.

11.    [Grandfather] has provided a safe and stable environment for the child since being appointed Guardian.

12.    [Grandfather] has taken [D.M.] to see a therapist, Elaine Robinson.

13.    Ms. Robinson testified about several sessions with [D.M.] and her belief that [D.M.] was afraid of [Mother].

14.    On cross, Ms. Robinson admitted to not having witnessed any interaction between the [D.M.] and [Mother].

15.    The Court appointed a Guardian ad Litem, Pamela Moon, in this matter.

16.    Ms. Moon met with all of the parties and prepared and filed a Report to the Court.

17.    Ms. Moon's report and testimony was that the guardianship should be terminated based upon how well [Mother] was doing.

18.    [D.M.'s] teacher testified that she is a great student and doing very well in the 1st grade.

LAW AND DISCUSSION

Indiana Code Sec. 29-3-12-1(c)(4) provides that a guardianship may be terminated if the guardianship is no longer necessary for any reason. Parents' fundamental right to make decisions regarding their children is

5

protected by the Fourteenth Amendment's Due Process Clause. In re L.L., 745 N.E.2d 222, 228-29 (Ind. App. 2001)[, trans. denied]. "Indiana law has long recognized that natural parents are entitled to the custody of their minor children, except when they are unsuitable persons to be entrusted with their care, control, and education." In re B.H., 770 N.E.2d 283, 285 (Ind. 2002) (internal quotes and citation omitted)[, reh'g denied]. The Court in B.H. held that a person other than a natural parent must prove by *clear and convincing evidence* that placement with the non-parent is necessary. Id. at 287. "The presumption will not be overcome merely because a third party could provide the better things in life for the child." Id. The presumption in favor of a natural parent is very strong and historically has been very difficult to overcome. The Indiana Supreme Court has previously held that "to rebut this presumption it must be shown by the attacking party that there is, (a) unfitness, (b) long acquiescence, or (c) voluntary relinquishment such that the affections of the child and third party have become so interwoven that to sever them would seriously mar and endanger the future happiness of the child." Hendrickson v. Binkley, [161 Ind. App. 388,] 316 N.E.2d 376 [(1974), cert. denied, 423 U.S. 868, 96 S. Ct. 131 (1975)]. A simple best interests standard is insufficient. In the case at bar, the evidence fails to rebut the presumption that [Mother] is entitled to the custody of her daughter. The Court is concerned with the transition of the child from [Grandfather] to [Mother] and orders that [Mother] follow any recommendations from probation or community corrections concerning counseling for herself or [D.M.].

IT IS THEFORE ORDERED, ADJUDGED, AND DECREED that the Motion to Terminate Guardianship is granted. [D.M.] is to be surrendered to the custody of [Mother] at the end of school today. [Mother] shall pick [D.M.] up from school.

IT IS FURTHER ORDERED that [Grandfather] provide to [Mother] all of [D.M.'s] clothing and belongings.

IT IS FURTHER ORDERED that [Mother] shall follow any recommendations made by probation or community corrections concerning counseling for herself or [D.M.].

Appellant's Appendix at 12-14.

6

DISCUSSION

I.

The first issue is whether the trial court abused its discretion by terminating Grandfather's guardianship of D.M. "All findings and orders of the trial court in guardianship proceedings are within the trial court's discretion." In re Guardianship of J.K., 862 N.E.2d 686, 690 (Ind. Ct. App. 2007) (citing Ind. Code § 29-3-2-4). Thus, we will review those findings under an abuse of discretion standard. Id. In determining whether the trial court abused its discretion, we look to the trial court's findings of fact and conclusions thereon. We may not set aside the findings or judgment unless they are clearly erroneous. Menard, Inc. v. Dage-MTI, Inc., 726 N.E.2d 1206, 1210 (Ind. 2000), reh'g denied. In our review, we first consider whether the evidence supports the factual findings. Id. Second, we consider whether the findings support the judgment. Id. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." Quillen v. Quillen, 671 N.E.2d 98, 102 (Ind. 1996). A judgment is clearly erroneous if it relies on an incorrect legal standard. Menard, 726 N.E.2d at 1210. We give due regard to the trial court's ability to assess the credibility of witnesses. Id. While we defer substantially to findings of fact, we do not do so to conclusions of law. Id. We do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. Yoon v. Yoon, 711 N.E.2d 1265, 1268 (Ind. 1999).

Under Ind. Code § 29-3-5-3, a trial court may appoint a guardian to a minor if "the appointment of a guardian is necessary as a means of providing care and supervision of

7

the physical person or property of the . . . minor." With respect to the termination of a guardianship, Ind. Code § 29-3-12-1(c) provides that a trial court may terminate any guardianship if "the guardianship is no longer necessary for any other reason." "In determining whether a guardianship should be terminated, however, we have generally applied a more detailed test than required by the plain language of the statute." Roydes v. Cappy, 762 N.E.2d 1268, 1274 (Ind. Ct. App. 2002) (citing Froelich v. Clark, 745 N.E.2d 222, 227 (Ind. Ct. App. 2001), trans. denied). We look beyond whether the original grounds for granting the guardianship still exist. Id. This is based on the concern that a guardianship proceeding in such circumstances is, in essence, a child custody proceeding that raises important concerns about parental rights and the "best interests" of the child. Id.

"Indiana courts have long held that '[e]ven when a parent initiates an action to reobtain custody of a child that has been in the custody of another, the burden of proof does not shift to the parent . . . [r]ather, the burden of proof is always on the third party." In re K.I., 903 N.E.2d 453, 460 (Ind. 2009) (quoting In re Guardianship of J.K., 862 N.E.2d 686, 692 (Ind. Ct. App. 2007)). "It is of course true that a party seeking a change of custody must persuade the trial court that '(1) modification is in the best interests of the child; and (2) there is a substantial change in one (1) or more of the factors that the court may consider under section 2 and, if applicable, section 2.5 of [Ind. Code §§ 31-14-13].'"[2] Id. (quoting Ind. Code § 31-14-13-6).[3] "But these are modest requirements where

_____

[2] Ind. Code § 31-14-13-2 provides the following factors:

(1)      The age and sex of the child.

8

the party seeking to modify custody is the natural parent of a child who is in the custody of a third party." Id.

"The parent comes to the table with a 'strong presumption that a child's interests are best served by placement with the natural parent.'" Id. (quoting In re Guardianship of B.H., 770 N.E.2d 283, 287 (Ind. 2002), reh'g denied). "Hence the first statutory requirement is met from the outset." "In essence, although in a very technical sense, a natural parent seeking to modify custody has the burden of establishing the statutory requirements for modification by showing modification is in the child's best interest, and

---

(2)  The wishes of the child's parents.

(3)  The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4)  The interaction and interrelationship of the child with:

(A)  the child's parents;

(B)  the child's siblings; and

(C)  any other person who may significantly affect the child's best interest.

(5)  The child's adjustment to home, school, and community.

(6)  The mental and physical health of all individuals involved.

(7)  Evidence of a pattern of domestic or family violence by either parent.

(8)  Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 2.5(b) of this chapter.

[3] Ind. Code § 31-17-2-21(a) contains a similar provision and provides:

The court may not modify a child custody order unless:

(1)  the modification is in the best interests of the child; and

(2)  there is a substantial change in one (1) or more of the factors that the court may consider under section 8 and, if applicable, section 8.5 of this chapter.

that there has been a substantial change in one or more of the enumerated factors, as a practical matter this is no burden at all." Id. "More precisely, the burden is minimal." Id. "Once this minimal burden is met, the third party must prove by clear and convincing evidence 'that the child's best interests are substantially and significantly served by placement with another person.'" Id. at 460-461 (quoting B.H., 770 N.E.2d at 287). If the third party carries this burden, then custody of the child remains in the third party. Id. Otherwise, custody must be modified in favor of the child's natural parent. Id.

Grandfather argues that the evidence did not support any finding that would allow the guardianship to be terminated. He asserts that there was ample evidence to show that Mother was unfit because she was using drugs, that D.M. was afraid of Mother, and that D.M. had been denied food while she was in Mother's care.

Mother argues that Grandfather had the initial burden to overcome the presumption in favor of natural parents by clear and convincing evidence, demonstrate a need for a guardianship, and demonstrate that he was an appropriate person to be named guardian. Mother argues that the record demonstrates that she has made substantial improvements to her life and that Grandfather's argument is an invitation to reweigh the evidence.

At the hearing, Shelby Bear, the case manager for Jefferson County Community Corrections, testified that she had seen a progression in Mother's behavior and growth, that Mother had not tested positive for any drugs, and that she believed that Mother was prepared to be a parent to D.M. Mother testified that she was currently employed and was actively seeking employment closer to her new residence in Kentucky. Mother also

10

indicated that she was prepared to be the proper parent that D.M. needs. Mother's aunt, D.S., testified that she had noticed a change in Mother and thought that Mother was prepared to be a parent again for D.M. Moon, the guardian ad litem, testified that Mother was "doing everything that she's supposed to be doing," that Mother seemed to be very truthful and very remorseful. Transcript at 48. Moon's report indicates that she contacted a number of individuals including D.M., Mother, Grandfather and his wife, the paternal grandparents, Mother's aunt, and Shelby Bear. With respect to Mother, Moon's report states:

> This GAL has concerns in many areas, most of all the drug allegations against [Mother] and the fear that her family holds that she will do it all again once she gets off probation. [Mother] assures me that she is trying to change her life and is trying to stay away from the influences that helped put her in the place she's in now. She is succeeding at this point. I encountered no 'red flags' during my lengthy conversation with [Mother].
>
> I saw no evidence that [Mother] was being anything but truthful with me. She was bright eyed, joyful at the prospect of getting [D.M.] back and determined to make a better life for both of them. She is excited about living near her [aunt] and she feels [her aunt] will be the best support person for her and [D.M.]. [Mother's aunt] wants to help [Mother] and willingly accepts this responsibility. [Mother] has already researched the school [D.M.] would be enrolled in and has talked to them about transferring [D.M.] there.

Respondent's Exhibit 1 at 4. Moon recommended that Grandfather's guardianship be terminated and custody be returned to Mother.

Based upon the record and considering the strong presumption that a child's interests are best served by placement with the natural parent, we conclude that Mother met her burden, which the Indiana Supreme Court characterized as a "minimal" burden of establishing the statutory requirements for modification by showing that modification

11

was in the child's best interest and that there had been a substantial change in one or more of the enumerated factors.

To the extent that D.M.'s therapist raised concerns with respect to Mother, we observe that D.M.'s therapist admitted that she did not know Mother and her opinion was based upon "[n]ot having the full picture of [D.M.'s] interaction with [M]other." Transcript at 77. While D.M.'s therapist indicated that D.M. had not been coached, the guardian ad litem believed that D.M. had been coached. Moreover, as previously mentioned, the guardian ad litem concluded that guardianship with Grandfather be terminated and custody be returned to Mother. Under the circumstances, we cannot say that the trial court erred in concluding that Grandfather failed to prove by clear and convincing evidence that D.M.'s best interests are substantially and significantly served by placement with Grandfather.

## II.

The next issue is whether the trial court abused its discretion by awarding Mother immediate custody of D.M. Grandfather argues that the trial court abused its discretion in neglecting to order a gradual release for D.M. He contends that "[i]t is clear that the overriding concern of courts is and should be the best interest of the child," and "[e]ach standard dealing in some way with the custody and/or visitation of children encompasses this concern." Appellant's Brief at 6. Grandfather contends that "it was not in [D.M.'s] best interest to be taken from a stable home where she was flourishing and thrust unceremoniously into her biological mother's home without so much as a brief transition period." Id.

12

Mother argues that Grandfather offers no legal support for his argument, that his argument is premised upon the "general best interest" standard commonly applied by the courts in custody disputes, and the best interests analysis was prohibited in this case because Grandfather failed to meet the burden of overcoming the presumption in favor of the natural parent by clear and convincing evidence. Mother also asserts that any perceived error in failing to order a transition was harmless error because a custody transition order at this juncture would be without substantial benefit given that at the time of the writing of her brief, D.M. will have been in the care of Mother for six months. Mother acknowledges that Grandfather's argument that "transitioning D.M. immediately, without a phased in period, is not addressed in any legal precedent in Indiana" and that the "Indiana Parenting Time Guidelines in the commentary to Section II of both the 2012 and 2013 editions support a 'phased in' schedule when there has been a lack of contact for any reason." Appellee's Brief at 13. Mother also recognizes that "there is some support for the notion that courts should be careful how they transition children," but argues that "unless and until the similarities and differences between custody, de facto custody and guardianship are specifically delineated by the legislature, there can be no argument for abuse of discretion." Id.

As previously noted, "[a]ll findings and orders of the trial court in guardianship proceedings are within the trial court's discretion." J.K., 862 N.E.2d at 690 (citing Ind. Code § 29-3-2-4). The record reveals that D.M.'s therapist and the guardian ad litem both recommended that D.M.'s relationship with Grandfather and his wife not be terminated immediately. Robinson, D.M.'s therapist, indicated that there needs to be a

13

"calculated over the course-of-time transition to make things best for" D.M. Transcript at

72. At the hearing, the following exchange occurred during the direct examination of the

guardian ad litem:

Q.    If [Mother] went ahead and moved to Kentucky say tomorrow, are
      you comfortable with the transition of her immediately, or what were
      your thoughts on that?

A.    Well, I . . . I didn't know that the probation had been . . . been
      approved already and didn't know that was a possibility. I suppose
      that . . . that I would feel that maybe there should be some kind of a
      transition period, maybe a couple of weeks or something. I mean
      it's important that she get into the school and start off the school
      year where she's going to be at. Uh . . . but because she hasn't seen
      [Mother] for several months, that the transition from [Grandfather
      and his wife] might be easier if it was made uh . . . like she starts out
      spending weekends maybe with [Mother] and [D.S.] if that's where
      you're going to live. I don't know where she's going to live right
      now, but uh . . . so probably a gradual . . . I mean not . . . not a long .
      . . not a long transition, just a couple of weeks because [Mother] has
      not seen her for several months and . . . and I think it would be just
      better if she was allowed to interact with . . . you know, between
      [Mother] and D.M. and get that mother-daughter thing going again
      before you just plop her down in a new place, a new state, a new
      school, and say, "Here you go."

Q.    And in your report you state that you think there should be continued
      visitation with . . . between D.M. and [Grandfather and his wife]. Is
      that correct?

A.    Right.

Q.    Why do you think that should be?

A.    Well, I mean [Grandfather and his wife] have been a big part of
      D.M.'s life. They've done everything for her, and they love her very
      much, and they've done everything for her the last several months,
      and uh . . . I mean D.M. loves them. They love D.M. I think that . . .
      that it would be unfair to D.M. and unfair to [Grandfather and his
      wife] to just take that all away and . . . and not let that continue with
      some regularity.

14

Id. at 51-53.  And on cross-examination, the guardian ad litem indicated that visitation with Grandfather and his wife was in D.M.'s best interest.

The guardian ad litem's report states:

[Grandfather and his wife] have been a huge part of [D.M.'s] life for the last several months.  As her guardians, they have provided everything for her.  *If guardianship with them were terminated, it would be very unfair if they were not allowed to see [D.M.].  I feel certain that it would also adversely affect [D.M.].*  They love [D.M.] and [D.M.] loves them – [D.M.] should be allowed routine visitation with them just as she is allowed visits with the paternal grandparents . . . .

[T]his GAL recommends:

- Guardianship with [Grandfather and his wife] be terminated and custody be returned to [Mother].
- *That the full transition from [Grandfather's] household to [Mother's] household be made after [Mother] has housing in Carrollton, either with [Mother's aunt] or has her own apartment.*
- *Until transition occurs, [Mother] should be allowed liberal visitation with [D.M.], either at [Grandfather's] residence, or at an agreed upon location.*
- *Once transition occurs, [Grandfather and his wife] should be allowed visitation with [D.M.] on a regular basis, as should the [paternal grandparents].*

Respondent's Exhibit 1 at 4 (emphases added).

We recognize that the trial court's order states: "The Court is concerned with the transition of the child from [Grandfather] to [Mother] and orders that [Mother] follow any recommendations from probation or community corrections concerning counseling for herself or [D.M.]."  Appellant's Appendix at 14.  Given that both D.M.'s therapist and the guardian ad litem recommended some sort of transition period in which D.M. would still have contact with Grandfather and his wife and the guardian ad litem's report indicated that Mother stated that "if guardianship of [D.M.] is terminated and custody is

15

awarded back to her, she will not allow [Grandfather and his wife] to see [D.M.] at any time," Respondent's Exhibit 1 at 2-3, we are troubled by the trial court's order that D.M. "is to be surrendered to the custody of [M]other at the end of school today" and that Mother "shall pick the child up from school." Appellant's Appendix at 15.

We observe that Grandfather does not argue that he sought visitation under the Grandparent Visitation Act.[4] There is authority for the proposition that the only

---

[4] Ind. Code § 31-17-5-1 provides:

(a)      A child's grandparent may seek visitation rights if:

     (1)      the child's parent is deceased;

     (2)      the marriage of the child's parents has been dissolved in Indiana; or

     (3)      subject to subsection (b), the child was born out of wedlock.

(b)      A court may not grant visitation rights to a paternal grandparent of a child who is born out of wedlock under subsection (a)(3) if the child's father has not established paternity in relation to the child.

Ind. Code § 31-17-5-3 provides:

A proceeding for grandparent's visitation must be commenced by the filing of a petition entitled, "In Re the visitation of _____". The petition must:

     (1)      be filed by a grandparent entitled to receive visitation rights under this chapter;

     (2)      be verified; and

     (3)      set forth the following:

         (A)      The names and relationship of:

             (i)      the petitioning grandparent or grandparents;

             (ii)      each child with whom visitation is sought; and

             (iii)      the custodial parent or guardian of each child.

         (B)      The present address of each person named in clause (A).

         (C)      The date of birth of each child with whom visitation is sought.

16

circumstance under which a grandparent may seek visitation rights is by filing a proper petition under the Grandparent Visitation Act. See In re Guardianship of J.E.M., 870 N.E.2d 517, 519 (Ind. Ct. App. 2007) ("Although [grandmother] claims this case is not governed by the [Grandparent Visitation Act], she fails to provide any alternative legal basis upon which she could seek visitation with [her grandson]. This court did recognize a common law right for grandparents to seek visitation with their grandchildren under certain circumstances in Krieg v. Glassburn, 419 N.E.2d 1015, 1019 (Ind. Ct. App. 1981). However, following the passage of the [Grandparent Visitation Act] shortly after Krieg was decided, we have consistently held that the [Grandparent Visitation Act] is the exclusive method for grandparents to seek visitation with their grandchildren and that there is no longer an independent common law right for grandparents to seek visitation."); In re Guardianship of K.T., 743 N.E.2d 348, 351 (Ind. Ct. App. 2001) (holding that the trial court erred in granting grandparents visitation privileges ancillary to a guardianship which was simultaneously closed).[5]

---

(D)    The status under section 1 of this chapter upon which the grandparent seeks visitation.

(E)    The relief sought.

[5] It also has been held that one who has had a "custodial and parental relationship" with a child may later seek visitation with the child, if it is in the child's best interests. See In re J.E.M., 870 N.E.2d at 519; In re Custody of Banning, 541 N.E.2d 283, 284 (Ind. Ct. App. 1989). It could be argued that Grandfather had a "custodial and parental relationship" with D.M. However, the Indiana Supreme Court has expressed the opinion that the "custodial and parental relationship" right to visitation should extend only to stepparents, for example where a natural parent remarries and later dies, and the stepparent seeks visitation when custody of a child returns to the surviving natural parent, see Worrell v. Elkhart Cnty. Office of Family & Children, 704 N.E.2d 1027, 1029 (Ind. 1998), or perhaps a former domestic partner under certain circumstances. See King v. S.B., 837 N.E.2d 965, 966 (Ind. 2005) (holding that a domestic partner may be entitled to "[a]t least some relief"); M.S. v. C.S., 938 N.E.2d 278, 286 (Ind. Ct. App. 2010) (observing that King "casts doubt on the conclusion that third-party visitation is strictly limited to former stepparents").

17

In K.I., the Indiana Supreme Court acknowledged that there is authority for the proposition that the only circumstance under which a grandparent may seek visitation rights is by filing a proper petition under the Grandparent Visitation Act. 903 N.E.2d at 463 n.8 (citing In re K.T., 743 N.E.2d at 351; In re J.E.M., 870 N.E.2d at 519). The Court then stated: "However, the parties have already expended substantial time and resources litigating this matter. Therefore we conclude that for the sake of judicial economy the filing of a separate petition for grandparent visitation is unnecessary in this case." Id. The Court ultimately reversed the trial court's award of visitation to the grandmother based upon the trial court's reliance upon the Indiana Parenting Time Guidelines[6] and remanded the cause with instructions to enter appropriate findings and conclusions consistent with the Grandparent Visitation Act.

Grandfather cites K.I., but does not specifically request remand for findings consistent with the Grandparent Visitation Act. Rather, Grandfather appears to focus on the trial court's failure to provide for a transition period.[7] As Mother points out, the trial court's order was entered on September 18, 2012, which is now more than seven months ago, and Grandfather does not address Mother's argument that any error is essentially moot. Under the circumstances, we cannot say that remand is warranted.[8]

---

[6] With respect to the Parenting Time Guidelines, the Indiana Supreme Court held that the Guidelines have no mandatory application to grandparent visitation disputes. See K.I., 903 N.E.2d at 461.

[7] Grandfather phrases the issue as "[w]hether the trial court abused its discretion in failing to order a transition phase for [D.M.]." Appellant's Brief at 1.

[8] We note that Grandfather may seek visitation rights under the Grandparent Visitation Act per Ind. Code § 31-17-5-1(a)(3).

For the foregoing reasons, we affirm the trial court's termination of Grandfather's guardianship over D.M.

Affirmed.

RILEY, J., and BRADFORD, J., concur.