In re the GUARDIANSHIP OF B.H. and S.H., minor children.

No. 67S05–0101–JV–36.

Supreme Court of Indiana.

June 21, 2002.

Daniel F. Zielinski, Deckard & O'Brien, Danville, Indiana, Attorney for Appellant.

Sharon L. Hammond, Greencastle, Indiana, Attorney for Appellee.

On Petition To Transfer

DICKSON, Justice.

In this appeal, the father of two children challenges an order appointing their stepfather as permanent guardian following the death of the children's mother. The Court of Appeals reversed. *In re Guardianship of B.H.*, 730 N.E.2d 743 (Ind.Ct. App.2000). We granted transfer, *Holley v. Childress*, 753 N.E.2d 1 (Ind.2001), and now affirm the trial court.

B.H. and S.H. were born to Edward and Sherrie Holley during their marriage. Edward and Sherrie separated in 1991. The children moved with their mother to Indiana. During this time, their father, who was serving in the Army, was stationed in Germany and Boston. The children remained with their mother, who began living with John Childress, Sr., in September 1994. The Holleys' marriage was dissolved in December 1996 pursuant to a decree reflecting the parties' agreement that the mother have custody of the children and the father have specified visitation. The decree ordered the father to pay child support. The mother and Childress were married in August 1997. The mother died on December 22, 1998, when the children were 13 and 14 years old. Childress, as their stepfather, immediately sought and obtained an emergency order appointing him temporary guardian of the children. On January 11, 1999, the father filed a petition to terminate the temporary guardianship. Three days later, the stepfather petitioned for appointment as permanent guardian, which the father sought to dismiss. Following a contested hearing on the pending motions, the trial court denied the father's motions and appointed the stepfather as permanent guardian.

In his appeal, the father contends that the trial court abused its discretion and that the evidence does not establish any of the factors required in *Hendrickson v. Binkley*, 161 Ind.App. 388, 316 N.E.2d 376 (1974). The stepfather acknowledges that *Hendrickson* is a pivotal case, but argues that the evidence amply supported several of its required factors.

Indiana law has long recognized that "natural parents are entitled to the custody of their minor children, except when they are unsuitable persons to be entrusted with their care, control, and education." *Gilmore v. Kitson*, 165 Ind. 402, 406, 74 N.E. 1083, 1084 (1905); *see also* Ind.Code § 29-3-3-3, -6 (implicitly recognizing the natural parent presumption). Unless otherwise determined in a dissolution decree or in another proceeding authorized by law, a surviving parent has the right to custody of minor children. Ind.Code § 29-3-3-3. In *Gilmore*, a natural father sought the custody of his daughter following the death of his wife, whose will expressed her desire that her sister, not her husband, have custody of their daughter. Reversing an award of custody to the sister, this Court noted that "the interest of the child is the paramount consideration" in settling disputed custody claims, but emphasized that "we can not conceive that it should be invoked or enforced against a parent under no disabilities, unless he has forfeited his right by misconduct, or lost it by voluntary relinquishment or by long acquiescence in the care and custody of his child by another." 165 Ind. at 407, 74 N.E. at 1084. The opinion stated:

The principle of the welfare of the child may be applied to defeat the claims of a parent when he has voluntarily relinquished to others the custody and care of his child until the affections of the child and its foster parents have become so firmly interwoven that to sunder them would seriously mar and

endanger the future happiness and welfare of the child.

*Id.* at 407–08, 74 N.E. at 1084.

While this Court has consistently recited that the child's interests are paramount, our cases reflect a variation in the relative consideration given to the rights of the natural parent. In contrast to the elevated concerns for the natural parents emphasized in *Gilmore,* other cases appear to have given this factor diminished weight. In *Glass v. Bailey,* 233 Ind. 266, 118 N.E.2d 800 (1954), we affirmed a judgment adverse to the natural mother, observing that "the natural rights of the parent are entitled to due consideration, but the welfare and happiness of the child is the paramount consideration." 233 Ind. at 267–68, 118 N.E.2d at 801. We similarly noted in *Gilchrist v. Gilchrist,* 225 Ind. 367, 75 N.E.2d 417 (1947), that "the rights of parents, however, are not absolute. They must yield to the welfare of the child. Its welfare and best interest are the paramount and controlling considerations...." *Id.* at 372, 75 N.E.2d at 419.

Both *Glass* and *Gilchrist* stress that these cases are best placed in the sound discretion of the trial court. "Hard and fast rules of law do not prevail. The question presented rests upon the exercise of a sound judicial discretion by the trial judge." *Glass,* 233 Ind. at 268, 118 N.E.2d at 801. "The disposition of children is not controlled by hard and fast rules of law but by the exercise of the sound judicial discretion of the court confronted with the problem. Review by an appellate court of such disposition is limited to the question of abuse of judicial discretion." *Gilchrist,* 225 Ind. at 372, 75 N.E.2d at 419.

The Court of Appeals has also struggled with this issue. In *Hendrickson v. Binkley,* 161 Ind.App. 388, 316 N.E.2d 376 (1974), the Court of Appeals restated the *Gilmore* considerations in the following "three step approach":

> First, it is presumed it will be in the best interests of the child to be placed in the custody of the natural parent. Secondly, to rebut this presumption it must be shown by the attacking party that there is, (a) unfitness, (b) long acquiescence, or (c) voluntary relinquishment such that the affections of the child and third party have become so interwoven that to sever them would seriously mar and endanger the future happiness of the child. The third step is that upon a showing of one of these above three factors, then it will be in the best interests of the child to be placed with the third party.

161 Ind.App. at 393–94, 316 N.E.2d at 380. To overcome the presumption favoring the natural parent, one of the factors in the second step must be shown by "clear and cogent evidence." *Id.* at 395, 316 N.E.2d at 381. Some of its opinions follow the parental presumption approach of *Hendrickson.* *See, e.g. In re Guardianship of R.B.,* 619 N.E.2d 952, 954 (Ind.Ct.App. 1993); *In re Guardianship of Riley,* 597 N.E.2d 995, 997 (Ind.Ct.App.1992); *In re Custody of McGuire,* 487 N.E.2d 457, 460 (Ind.Ct.App.1985); *Kissinger v. Shoemaker,* 425 N.E.2d 208, 210–11 (Ind.Ct.App. 1981); *In re Guardianship of Phillips,* 178 Ind.App. 220, 224, 383 N.E.2d 1056, 1059 (1978).

Beginning with *Turpen v. Turpen,* 537 N.E.2d 537 (Ind.Ct.App.1989), however, several opinions by the Court of Appeals have avoided a strict application of the *Hendrickson* methodology. In *Turpen,* the Court of Appeals criticized this methodology because it "suggest[ed] to litigants that the trial court must employ a mechanical approach in evaluating the evidence before it." *Id.* at 539–40 n. 2. *Turpen*

instead applied an ostensibly simplified analysis:

> The question before us then is whether there is any evidence in favor of the trial court's determination that the presumption the interest of the child would best be served by placing him in the custody of the natural mother had been sufficiently rebutted by the evidence.

537 N.E.2d at 539. Several opinions of the Court of Appeals have expressed a preference for the *Turpen* formulation. *See e.g.,* *In re Marriage of Huber,* 723 N.E.2d 973 (Ind.Ct.App.2000)(agreeing with trial court that there may be circumstances outside the three *Hendrickson* factors that could support granting custody to a nonparent); *In re Paternity of L.K.T.,* 665 N.E.2d 910, 912 (Ind.Ct.App.1996)(approving *Turpen* view that the child's best interests is the preeminent concern, prevailing over other considerations); *Atteberry v. Atteberry,* 597 N.E.2d 355, 357 (Ind.Ct.App.1992)(declaring "[o]ur law clearly prefers to consider the best interests of the child over the presumption that custody must be in a natural parent"). We believe the *Turpen* approach is inadequate.

■■■ Despite the differences among Indiana's appellate court decisions confronting child placement disputes between natural parents and other persons, most of the cases generally recognize the important and strong presumption that the child's best interests are ordinarily served by placement in the custody of the natural parent. This presumption does provide a measure of protection for the rights of the natural parent, but, more importantly, it embodies innumerable social, psychological, cultural, and biological considerations that significantly benefit the child and serve the child's best interests. To resolve the dispute in the caselaw regarding the nature and quantum of evidence required to overcome this presumption, we hold that, before placing a child in the custody of a person other than the natural parent, a trial court must be satisfied by clear and convincing evidence that the best interests of the child require such a placement. The trial court must be convinced that placement with a person other than the natural parent represents a substantial and significant advantage to the child. The presumption will not be overcome merely because "a third party could provide the better things in life for the child." *Hendrickson,* 161 Ind.App. at 396, 316 N.E.2d at 381. In a proceeding to determine whether to place a child with a person other than the natural parent, evidence establishing the natural parent's unfitness or acquiescence, or demonstrating that a strong emotional bond has formed between the child and the third person, would of course be important, but the trial court is not limited to these criteria. The issue is not merely the "fault" of the natural parent. Rather, it is whether the important and strong presumption that a child's interests are best served by placement with the natural parent is clearly and convincingly overcome by evidence proving that the child's best interests are substantially and significantly served by placement with another person. This determination falls within the sound discretion of our trial courts, and their judgments must be afforded deferential review. A generalized finding that a placement other than with the natural parent is in a child's best interests, however, will not be adequate to support such determination, and detailed and specific findings are required. *Huber,* 723 N.E.2d at 976.

■■■ "In deference to the trial court's proximity to the issues, 'we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment.'" *Oil Supply Co., Inc. v. Hires Parts Serv., Inc.,* 726

N.E.2d 246, 248 (Ind.2000)(quoting *Chidester v. City of Hobart,* 631 N.E.2d 908, 910 (Ind.1994)(citing *Indianapolis Convention & Visitors Ass'n v. Indianapolis Newspapers, Inc.,* 577 N.E.2d 208 (Ind.1991))). We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. *Id.* A challenger thus labors under a heavy burden, and must show that the trial court's findings are clearly erroneous. Ind.Trial Rule 52(A); *Chidester,* 631 N.E.2d at 909–10. Child custody determinations fall squarely within the discretion of the trial court and will not be disturbed except for an abuse of discretion. *Clark v. Clark,* 726 N.E.2d 854, 856 (Ind.Ct.App.2000). Reversal is appropriate only if we find the trial court's decision is against the logic and effect of the facts and circumstances before the Court or the reasonable inferences drawn therefrom. *Id.* We also note that, in reviewing a judgment requiring proof by clear and convincing evidence, an appellate court may not impose its own view as to whether the evidence is clear and convincing but must determine, by considering only the probative evidence and reasonable inferences supporting the judgment and without weighing evidence or assessing witness credibility, whether a reasonable trier of fact could conclude that the judgment was established by clear and convincing evidence. *See Bud Wolf Chevrolet, Inc. v. Robertson,* 519 N.E.2d 135, 137 (Ind.1988).

█ Basing his appeal on the *Hendrickson* three-step test, the father argues that the presumption favoring placement with the natural parent was not overcome because there was no evidence that he was an unfit parent nor that he had long acquiesced in the children's placement with the stepfather, nor that the children would be harmed if their relationship with their stepfather were severed. As we explained above, however, the trial court is not limited to the three *Hendrickson* factors.

The trial court's findings of fact and conclusions of law indicate that it relied on many factors in determining that the stepfather should be appointed guardian of the children: the estranged relationship between the children and their father and his lack of any significant interaction with them since his 1991 separation from their mother; the failure of the father to stay current in paying his child support for the children; instances of abuse before the separation and the father's violent confrontation with the children's maternal aunt after the separation; the father's history of excessive drinking that resulted in an arrest for driving while intoxicated in 1998 and a citation for public intoxication after he moved to Houston, Texas in 1996; the stepfather's role as the only psychological father the children have known since December 1991; the children's connections with the community and the proximity of extended family provided by placement with the stepfather; the teenaged children's strong desire to remain in Indiana with the stepfather; the recommendations of the CASA report and the children's psychotherapist that it is in the best interests of the child to remain in Indiana with the stepfather; and the stepfather's role as the primary source of financial support for the children for the previous four years.

These detailed findings provide ample support for the judgment of the trial court in granting the stepfather's guardianship petition. The trial court was clearly convinced that placement with the stepfather represents a substantial and significant advantage to the children. According the trial court proper deference, as we must, we decline to find its findings to be clearly erroneous or its judgment to be against the logic and effect of the evidence.

The judgment of the trial court appointing the stepfather, John Ray Childress, Sr., as permanent guardian of B.H. and S.H. is affirmed.

BOEHM and RUCKER, JJ., concur.

SHEPARD, C.J., concurs in result with separate opinion in which SULLIVAN, J., concurs.

SHEPARD, Chief Justice, concurring in result.

At least since 1905, this Court has held that there is a strong presumption that natural parents are the proper custodians of their own children. In *Gilmore v. Kitson,* 165 Ind. 402, 74 N.E. 1083 (1905), we spelled out the rather dire circumstances under which this presumption might be overcome such that someone other than the parent could obtain custody: forfeiture by misconduct, abandonment, or long acquiescence in custody by another. *Id.,* 165 Ind. at 407, 74 N.E. at 1084.

The more recent expression of this rule appeared in *Hendrickson v. Binkley,* 161 Ind.App. 388, 316 N.E.2d 376 (1974), which relied on *Gilmore.* Judge Lowdermilk's opinion in *Hendrickson* has been perhaps the cornerstone of our law in this field over the last quarter century.

Until recently. As Justice Dickson points out, some very recent decisions of the Court of Appeals hold that a court may strip a parent of his or her role on simpler grounds. Such seemed to be the holding, for example, in *Atteberry v. Atteberry,* 597 N.E.2d 355, 357 (Ind.Ct.App.1992) ("Our law clearly prefers to consider the best interests of the child over the presumption that custody must be in a natural parent.").

The apparent object of Justice Dickson's opinion is to disapprove the rather casual approach to taking children away from parents represented by *Atteberry* and other opinions in the *Turpen* line of cases. Instead, today's opinion says, courts may place a child with a non-parent only when a rigorous standard is met. There is an "important and strong presumption" in favor of the child's natural parent. Op. at 287. A non-parent must overcome this presumption by "clear and convincing evidence." *Id.* The fact that the non-parent might be better as a provider or presents evidence that merely leads the trial judge to conclude that placement with the non-parent is "in the best interests of the child" do not suffice to overcome this presumption. *Id.* at 287.

I embrace the objective of requiring a rather considerable showing to overcome the natural parent. I do not join today's opinion, however, because I think what the Court ends up saying about the required showing actually weakens the parental presumption as it has usually been applied by us and by the Court of Appeals over the last five generations.

The tests from *Gilmore* and *Hendrickson,* today's opinion says, are "important," but hardly exhaustive, because "[t]he issue is not the 'fault' of the natural parent but whether the best interests of the child will be substantially and significantly served by placement with another person." Op. at 287. This declaration seems to take us back to *Turpen* and *Atteberry,* the very line of cases the opinion seeks to disapprove.

Whether *Gilmore/Hendrickson* or *Turpen* is now the rule seems unresolved. Today's opinion counsels against the "rigid" three factors from *Gilmore* and *Hendrickson,* suggesting that the father in this case might well prevail if the trial court was limited to examining proof of those three factors. Op. at 288. But, the opinion says, the father loses anyway, because there are "many factors" other than the

*Gilmore* three to demonstrate that the stepfather should prevail.

As I see it, nearly all of these "many factors" fall within the *Gilmore* formula. The Court cites abuse, violence, and excessive drinking, all of which I see as evidence the father is "unfit" under *Gilmore*. It cites failure to care for the children since 1991 and chronic failure to pay support, called "abandonment" in *Gilmore*. And, it cites the stepfather's role as the only psychological father the children have known, called "emotional interweaving" in *Gilmore* and *Hendrickson*.

Labeling all these facts as "factors" sufficient to warrant removing a child as long as the trial judge is willing to say "clear and convincing" actually makes it somewhat easier to remove a child than it has been under *Gilmore* and *Hendrickson*. I think this is not what Justice Dickson intends, and perhaps asking the question another way will highlight why. If the evidence showed that the natural parent was a fit parent, that he/she was caring regularly for the child, and that no third person was emotionally central to the child's life, what "non-*Gilmore* factors" would suffice to remove the child from the natural parent? It is hard to imagine what such factors would be.

I think the *Gilmore/Hendrickson* line of cases has served well historically and serves well for the case before us. Today's opinion abandons that tether, in favor of a regime under which any old facts may suffice.

SULLIVAN, J., concurs.