Clinton M. **CHRISTIAN** and Leanna Christian, Appellants,

v.

Dawn **DURM**, Appellee.

No. 48A04–0610–CV–610.

Court of Appeals of Indiana.

May 23, 2007.

John T. Wilson, Anderson, IN, Attorney for Appellants.

Jason A. Childers, Hulse Lacey Hardacre Austin & Shine, P.C., Anderson, IN, Attorney for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellants Clinton M. and Leanna Christian ("the Christians") appeal an award of the custody of their minor child H.C. to Intervenor Dawn Durm ("Durm"). We affirm.

### Issues

The Christians present two issues for review:

I. Whether the trial court erred by refusing to dismiss Durm's custody petition subsequent to the dismissal of the dissolution action in which Durm intervened; and

II. Whether the award of custody to Durm is supported by clear and convincing evidence that the placement is in the best interests of H.C.

### Facts and Procedural History

On March 30, 2006, Leanna was arrested for committing battery upon Clinton. On April 6, 2006, Clinton filed a petition to dissolve his marriage to Leanna, and requested custody of the only child of the marriage, seven-month-old H.C. In anticipation of the dissolution action, Clinton had asked Shawn Mahoney to videotape the apartment in which the Christians had lived.[1]

On April 2, 2006, Clinton left seven-month-old H.C. in Durm's around-the-clock care. Clinton told Durm that he needed to look for work and that he didn't want to leave H.C. in his home "with ants all over the floor." (Tr. 62.) H.C. weighed only thirteen pounds. She exhibited a "blank stare" and did not attempt to crawl. (Tr. 28.) H.C. stank and she suffered from a severe diaper rash that was "raw and red." (Tr. 28.) Durm initially thought that H.C. was only four months old. Clinton advised Durm to feed H.C. 2% milk, and further advised, "she didn't like water." (Tr. 29.) After being fed infant formula, baby foods, and cereal, H.C. began to thrive. She gained approximately six pounds in six weeks, and began to smile, laugh and crawl. Clinton signed a document giving Durm guardianship of H.C. for the purpose of seeking medical attention for her.

---

1. The videotape, later admitted as an exhibit at the custody hearing, revealed an apartment filled with litter, soiled clothing, debris, alcohol bottles, stagnant water in the sink, and food with maggots.

On June 23, 2006, Durm petitioned to intervene in the dissolution action and sought custody of H.C. On June 26, 2006, the trial court scheduled a hearing on the custody petition for July 6, 2006. On June 27, 2006, Clinton filed a motion advising the trial court that he and Leanna had reconciled, and requesting dismissal of the dissolution petition. On June 28, 2006, Leanna filed a similar motion to dismiss. On June 29, 2006, the trial court dismissed the dissolution petition.

On July 6, 2006, the custody hearing proceeded. After the presentation of Durm's witnesses, the Christians moved for dismissal of the custody petition on grounds that custody was not properly at issue because the dissolution petition had been dismissed. The trial court denied the motion for dismissal. On July 7, 2006, the trial court granted custody of H.C. to Durm. The Christians now appeal.

## Discussion and Decision

### I. Right of Intervenor to Proceed

■ The Christians assert that the trial court "lacked jurisdiction" to hear the custody petition because the petition for marital dissolution had been dismissed. Appellants' Brief at 8.

■ "The question of subject matter jurisdiction entails a determination of whether a court has jurisdiction over the general class of actions to which a particular case belongs." *K.S. v. State,* 849 N.E.2d 538, 542 (Ind.2006). Personal jurisdiction requires submission of the individual parties to the authority of the court. *See id.* Here, both subject matter and personal jurisdiction are satisfied. A dissolution court has the power to determine custody of a child of the marriage. Ind. Code § 31–17–2–8. Moreover, there is no defect of service here and all parties appeared in court and submitted to its authority. Thus, the issue is not "jurisdic-

tional" but rather whether the trial court committed legal error by refusing to dismiss the intervenor's claim after the presentation of her case because the underlying claim had been voluntarily dismissed.

■ "An intervenor is treated as if it was an original party and has equal standing with the parties." *Mercantile Nat'l Bank of Ind. v. Teamsters Union Local No. 142 Pension Fund,* 668 N.E.2d 1269, 1271 (Ind.Ct.App.1996). *Accord Hoosier Outdoor Adv. Corp. v. RBL Mgmt., Inc.,* 844 N.E.2d 157, 161 (Ind.Ct.App.2006), *trans. denied.* Durm, as an intervenor, was to be treated as an original party and had a pending claim to pursue. The trial court did not err by proceeding with the merits of that claim despite the dismissal of the underlying dissolution petition.

### II. Sufficiency of the Evidence

■ The Christians challenge the award of custody to Durm as unsupported by sufficient evidence that the placement is in H.C.'s best interests. More specifically, they argue that they did not abandon their child, and they are fit parents because they are working with Child Protective Services, they have cleaned up their home, they are taking parenting classes, and Clinton is seeking employment.

■ Child custody determinations are within the discretion of the trial court and will not be disturbed except for an abuse of discretion. *Nunn v. Nunn,* 791 N.E.2d 779, 782 (Ind.Ct.App.2003). We will not reverse unless the trial court's decision is against the logic and effect of the facts and circumstances before it or the reasonable inferences drawn therefrom. *Id.*

■ Before placing a child in the custody of a person other than the natural parent, a trial court must be satisfied by clear and convincing evidence that the best interests of the child require such a place-

ment. *In re Guardianship of B.H.*, 770 N.E.2d 283, 287 (Ind.2002), *reh'g denied.* The presumption in favor of the natural parent will not be overcome merely because a third party could provide better things for the child. *Id.* In a proceeding to determine whether to place a child with a person other than the natural parent, evidence establishing the natural parent's unfitness or acquiescence, or demonstrating that a strong emotional bond has formed between the child and the third person, would be important, but the trial court is not limited to these criteria. *Id.* The issue is not merely the "fault" of the natural parent, but rather it is whether the important and strong presumption that a child's interests are best served by placement with the natural parent is clearly and convincingly overcome by evidence proving that the child's best interests are substantially and significantly served by placement with another person. *Id.* This determination falls within the sound discretion of our trial courts, and their judgments must be afforded deferential review. *Id.* Accordingly, the trial court was not required, as the Christians suggest, to make a specific finding of unfitness or abandonment.

The conditions of the home from which H.C. was removed were deplorable. She was underweight, smelled, and suffered from a bad diaper rash. Neither parent has full-time employment. Leanna had provided part-time in-home child care for two weeks immediately before the hearing and Clinton was unemployed after three years of seasonal work. Clinton's efforts to obtain employment are hindered by the lack of a vehicle. The parents have had chronic problems paying their rent and, prior to the instant hearing, their landlord had given them notice to vacate their apartment. Leanna was taking court-ordered anger management classes, but failed to control her son's aggression

against H.C. In Durm's home, H.C. had thrived, gained weight and attained age-appropriate motor skills. Accordingly, there is clear and convincing evidence that H.C.'s best interests are substantially served by placement with Durm.

Affirmed.

SHARPNACK, J., and MAY, J., concur.