Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jun 18 2013, 6:13 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**TIMOTHY E. STUCKY**
Blume, Connelly, Jordan, Stucky & Lauer, LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEES:

**ROBERT J. HENKE**
Indiana Department of Child Services
Indianapolis, Indiana

**ALISA L. RUDE**
Indiana Department of Child Services
Fort Wayne, Indiana

**MARK A. THOMA**
Leonard, Hammond, Thoma & Terrill
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF C.M. AND M.M.: | ) ) ) ) |
| R.M., | ) ) |
| Appellant-Respondent, | ) ) |
| vs. | )   No. 02A04-1209-JC-468 ) |
| INDIANA DEPARTMENT OF CHILD SERVICES, ANNETTE MARION and KENNETH MARION, | ) ) ) ) |
| Appellees-Petitioners. | ) |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Charles F. Pratt, Judge
The Honorable Thomas P. Boyer, Magistrate
Cause No. 02D08-0901-JC-24

**June 18, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

R.M. ("Mother") appeals the trial court's Order or Judgment of the Court awarding custody of her children, C.M. and M.M. ("the children"), to K.M. and A.M. ("the Grandparents") after the children had been adjudicated children in need of services ("CHINS"). Mother presents a single issue for review, which we restate as whether the evidence is sufficient to support the order awarding custody of the children to the Grandparents as a permanent placement in the CHINS proceeding.

We affirm.

## FACTS AND PROCEDURAL HISTORY

At issue in this case are two of Mother's children, C.M., born June 29, 1995, and M.M., born November 8, 1997.[1] In late January 2009, the Department of Child Services ("the DCS") removed C.M. and M.M. from Mother's care after a physical altercation between Mother and the children in their home. The DCS subsequently filed a petition alleging the children to be CHINS. On February 17, the trial court adjudicated the children to be CHINS and ordered placement in licensed foster care. Also in 2009, pursuant to a plea bargain, Mother was convicted of one count of misdemeanor battery with respect to the altercation with the children that had resulted in their removal. She was sentenced to one year of probation, and the trial court in the criminal proceedings issued a protective order prohibiting Mother from having any contact with the children.[2]

---

[1] Mother also has an older child, A.M.M., the half-sibling of C.M. and M.M. A.M.M. was also adjudicated a CHINS, but orders regarding that child are not at issue in this appeal.

[2] Mother has not included in the record on appeal any documentation regarding her criminal proceedings.

The protective order was terminated effective July 2009.[3]

On December 11, 2009, the DCS requested that the permanency plan for the children name A.M., their maternal grandmother, as the children's custodian. At that time, the children were in licensed foster care under the supervision of the DCS. On January 29, 2010, the trial court entered a permanency plan order, placing the children "in the legal custody of the maternal grandparents, [K.M. and A.M.], and authorizing the maternal grandparents to pursue custody" of the children. Appellant's App. at 67. On November 15, 2010, the DCS again filed a permanency plan requesting the court to place the children in the custody of their maternal grandparents. On November 30, the court approved that permanency plan and continued the children's placement with the Grandparents. And on October 3, 2011, the DCS again requested the court approve a permanency plan, under which the children would remain with the Grandparents. On October 31, 2011, the court entered its permanency plan order continuing that placement.

The trial court held review hearings on February 17 and July 26, 2012. After each hearing, the court entered an order continuing the children's placement with the Grandparents. On June 26, 2012, the DCS filed a motion for permanency, asking the trial court to modify custody awarded in the children's respective paternity cases and award custody of the children to the Grandparents, and a review hearing was held that day. On August 17, 2012, the trial court entered an "Order or Judgment of the Court" in C.M.'s and M.M.'s respective CHINS cases, in which the court found "by clear and convincing evidence that there has been a substantial change in one or more of the factors which the

---

[3] The record does not clarify whether the protective order expired or was terminated by court order before its expiration date.

3

Court may consider under I.C. [§] 31-14-3-2[4] for purposes of modifying custody" and that awarding custody to the Grandparents was in the children's best interests. Appellant's App. at 18, 25. And on August 22, 2012, the DCS filed a request to terminate its wardship of C.M. and M.M., which the court approved the following day. Mother filed her notice of appeal on September 21.

## DISCUSSION AND DECISION

Mother contends that the "evidence was insufficient to overcome the strong presumption that the best interests of the children were to be returned to the care and custody of" Mother. Appellant's Brief at 11. The trial court, Mother, and the DCS frame the issue as a custody dispute between a parent and a non-parent and state our standard of review based mostly on guardianship cases. We consider whether the trial court abused its discretion when it entered a permanency order in the CHINS proceeding placing the children with someone other than Mother, namely, the Grandparents.

"Where the dispute involves a parent and a third party, we cannot ignore the constitutional implications; the relationship of a parent and a child is of a constitutional dimension." L.J.S. v. M.S.S., 923 N.E.2d 458, 462 (Ind. Ct. App. 2010) (citations omitted), trans. denied.

> As the United States Supreme Court has recently reiterated, the Fourteenth Amendment's Due Process Clause protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.[] Moreover,
>
> > [T]here is a presumption that fit parents act in the best interests of their children. [S]o long as a parent adequately

---

4 Indiana Code Section 31-14-3-2 pertains to venue in paternity cases. The trial court likely meant Indiana Code Section 31-14-13-2, which pertains to custody following the determination of paternity.

4

cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children.

Thus, the preference in favor of a parent having custody of his or her children, where the parent has not been shown to be unfit, is rooted in the United States Constitution.

Id. (internal quotation marks and citations omitted, alterations in original).

We have described the law regarding a change of custody to a non-parent as follows:

Before placing a child in the custody of a person other than the natural parent, a trial court must be satisfied by clear and convincing evidence that the best interests of the child require such a placement. In re Guardianship of B.H., 770 N.E.2d 283, 287 (Ind. 2002). The trial court must be convinced that placement with a person other than the natural parent represents a substantial and significant advantage to the child. Id. The presumption will not be overcome merely because "a third party could provide the better things in life for the child." Id. (internal quotation omitted). In a proceeding to determine whether to place a child with a person other than the natural parent, the court may consider the natural parent's (1) unfitness, (2) long acquiescence in the third party's custody of the child, or (3) voluntary relinquishment of the child such that such that the affections of the child and third party have become so interwoven that to sever them would seriously mar and endanger the future happiness of the child. See K.I., 903 N.E.2d 453, 458-59 (citing Hendrickson v. Binkley, 161 Ind. App. 388, 394, 316 N.E.2d 376, 380 (1974)[, cert. denied]) (endorsing above factors but concluding they are non-exclusive for purposes of overcoming natural-parent presumption). The trial court is not, however, limited to these criteria. See id. At issue is whether the important and strong presumption that a child's interests are best served by placement with the natural parent is clearly and convincingly overcome by evidence proving that the child's best interests are substantially and significantly served by placement with another person. B.H., 770 N.E.2d at 287. This determination falls within the sound discretion of our trial courts, and their judgments must be afforded deferential review. Id.

T.P. v. B.C., 920 N.E.2d 726, 731-32 (Ind. Ct. App. 2010), trans. denied.

Here, the trial court entered a detailed Order regarding each of the children, including findings of fact and conclusions thereon. When a juvenile court has entered findings of fact and conclusions of law, we will not set aside a judgment unless it is clearly erroneous. In re J.Q., 836 N.E.2d 961, 966 (Ind. Ct. App. 2005). A juvenile court's findings of fact and conclusions of law are considered clearly erroneous only if our review of the entire record leads us to a definite and firm conviction that a mistake has been made. Id. In reviewing the juvenile court's findings of fact, we do not reweigh the evidence or judge the credibility of witnesses. Id. Instead, we consider only the evidence and reasonable inferences drawn therefrom that support the judgment. Id.

The court's orders awarding custody of the children to the Grandparents provide, in relevant part:

8. [M.M.] was adjudicated to be a child in need of services on February 17, 2009[,] in Allen Superior Court Case No. 02D08-0901-JC-24 due to problems with family violence in his home.

9. There has been a long history of family violence between [Mother] and her children, including the filing of criminal charges and delinquency charges.

10. On or about July 12, 2009, [Mother] was convicted of misdemeanor battery arising out of an episode of family violence with her children.

11. [M.M.] lived with [the Grandparents] in South Carolina from January of 2005 until August of 2008, due to problems and difficulties between [Mother] and her children.

12. Family counseling between [Mother] and [M.M.] has not been successful in improving their relationship.

13. [Mother] has been diagnosed with an anti-social personality disorder.

6

14.     [M.M.] has been residing with [the Grandparents] since January 15, 2010, pursuant to orders entered in Allen Superior Court Case No. 02D-08-0901-JC-24.

15.     [M.M.] has a strong bond and relationship with [the Grandparents].

16.     [Mother] has made minimal financial contribution for the care of [M.M.] since January 15, 2010.

17.     [Father] has made no financial contribution for the care of [M.M.] since January 15, 2010.

18.     [M.M.] has been receiving individual counseling while residing with [the Grandparents] to address issues of anger management.

19.     [M.M.] has achieved good grades in school while residing with his Grandparents.

20.     [M.M.] has been involved in extra curricular activities and developed friendships with peers while residing with his Grandparents in South Carolina.

21.     [Father] has had limited contact with [M.M.] since his birth.

22.     The presumption of parental custody by [M.M.] by [Mother] and [Father] has been rebutted by clear and convincing evidence.

23.     The court finds by clear and convincing evidence that there has been a change of circumstances so substantial and continuing as to make the terms of the custody order entered by the Allen Circuit Court in Case No. 02C01-0112-JP-523 unreasonable.

24.     The Court finds by clear and convincing evidence that there has been a substantial change in one or more of the factors which the Court may consider under I.C. [§] 31-14-3-2 [sic] for purposes of modifying custody.

25.     The Court finds by clear and convincing evidence that the best interest of [M.M.] is substantially and significantly served by granting his Grandparents sole legal custody and physical custody of [M.M.].

26.     The Grandparents  . . . are granted sole legal custody and physical custody of the minor child, [M.M.] . . . .

Appellant's App. at 24-26. The court entered identical findings in an order regarding C.M. except that the court also found that C.M. had been diagnosed with bipolar disorder.

Mother first contends that the evidence does not support the findings in paragraphs 11, regarding a three-year period when the children previously resided with the Grandparents. In support, Mother points to evidence showing that the children resided with the Grandparents from 2005 through 2008 due to Mother's financial difficulties, not due to difficulties between Mother and the children. The Grandparents cite no evidence in the record in support of this finding, and we will not search the record for such evidence. See State v. Omega Painting, Inc., 463 N.E.2d 287, 294 n.14 (Ind. Ct. App. 1984). Thus, we conclude that the evidence does not support the finding in paragraph 11 regarding either child.

Mother also argues that the evidence does not support the findings in paragraphs 16 in M.M.'s order and 17 in C.M.'s order that she provided minimal financial support to the children since they began living with the Grandparents in January 2010. But rather than contradicting that finding, Mother merely asserts that the trial court should have also found that Mother has very limited means and was incapable of providing any additional financial support. Because Mother does not challenge the accuracy of the finding regarding financial support, her challenge to this finding must fail.

Finally, Mother contends that the "record, taken in its entirety, wholly fails to establish that Mother was an unfit parent, neither unwilling nor unable to provide for her children and, indeed, that no attempt at reunification was ever made." Appellant's Brief at 16-17. To the extent Mother argues that a custody award to a non-parent may only be

8

made if the natural parent is found unfit, Mother is incorrect. Unfitness is merely one of the factors a court may consider in such cases. T.P., 920 N.E.2d at 731-32. Ultimately, the trial court must determine whether the children's "best interests are substantially and significantly served by placement with another person." Id. The court need not rely on the natural parent's unfitness to reach that conclusion. Id. at 733.

Here, Mother was originally awarded custody of C.M. in paternity proceedings on June 25, 1997, and of M.M. in paternity proceedings on July 31, 2002. Since then the trial court's order shows that there was a history of violence perpetrated by Mother on her children; that Mother has been diagnosed with an anti-social personality disorder; that Mother has not provided meaningfully to the financial needs of the children while they have been in the Grandparent's care; that the children lived with the Grandparents at Mother's request from 2005 through 2008; that the children have been living in South Carolina with the Grandparents since their placement there in the CHINS proceeding on January 15, 2010; that the children are doing well in school and participate in extracurricular activities; that the children are in counseling to deal with anger issues; and that family counseling between Mother and the children has not been successful. The trial court also took judicial notice of prior findings and orders entered in the children's CHINS and paternity cases. Those findings show in part that "[t]he relationship between the mother and the children is so strained that reunification cannot occur." Appellant's App. at 107 (January 14, 2010 Permanency Plan Order).

In sum, the trial court found a history of domestic violence, that the relationship between the children and Mother was strained, that counseling between the Mother and

9

the children has not been successful, that the children were doing well in school and socially in placement with the Grandparents, and that Mother suffers from anti-social personality disorder. And the CHINS statutes provide for permanent placement of a child with a relative. See Ind. Code § 31-34-21-7.5(c)(1)(D) (allowing consideration of permanent placement of CHINS with a relative). With the exception of paragraph 11 discussed above, the evidence supports the trial court's findings, and the findings support the trial court's conclusion that the presumption in favor of custody with Mother is clearly and convincingly rebutted and that the children's best interests are substantially and significantly served by placement with the Grandparents. See Smith v. Weedman (In re C.H.W.), 892 N.E.2d 166, 172 (Ind. Ct. App. 2008) (where the trial court makes special findings, we may affirm the judgment on any theory supported by the findings). The judgment of the trial court is not clearly erroneous. In re J.Q., 836 N.E.2d at 966.

Affirmed.

BAILEY, J., and BARNES, J., concur.