## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Jeffrey T. Jones, Jr.
Jones Law, PC
Warsaw, Indiana

ATTORNEYS FOR APPELLEE

Andrew P. Simmons
Lindsey A. Davenport
VanGilder & Trzynka
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In Re the Paternity of H.A. | August 26, 2015 |
| A.A. | Court of Appeals Case No. 57A03-1504-JP-128 |
| *Appellant,* | Appeal from the Noble Superior Court |
| v. | The Honorable James R. Heuer |
| R.M. and B.M., | Trial Court Cause No. 57C01-9809-JP-82 |
| *Appellee* | |

**Bailey, Judge.**

# Case Summary

A.A. ("Mother") appeals the denial of her petition to modify the physical custody of her now-seventeen-year-old daughter, H.A., who has been cared for by R.M. and B.M. ("Intervenors") since H.A.'s infancy.[1]  We affirm.

# Issues

Mother presents two issues for review:

    I.      Whether the trial court abused its discretion by denying a motion for appointment of a neutral custody evaluator to assist Mother's court-appointed attorney; and

    II.     Whether there exists sufficient evidence to support the custody decision.

# Facts and Procedural History

The parties agreed that the trial court would render its custody decision based upon the submission of court-ordered mental health care provider reports, parenting-time summaries, and other documentary exhibits.  No evidentiary

---

[1] When H.A.'s biological father, V.M., was still living, R.M. and B.M. were permitted to intervene in custody proceedings involving V.M. and Mother.  Thus, R.M. and B.M. are referred to as Intervenors in court documents.  It appears that they also acted as "de facto custodians."  Indiana law defines a "de facto custodian" as someone who has been the primary caregiver for, and financial support of, a child who has resided with the person for at least six months if the child is less than three years of age or one year if the child is at least three years of age.  Ind. Code § 31-9-2-35.5.  Here, the trial court found that Intervenors had provided primary care and supervision to H.A. for the majority of her life, under an informal custody arrangement.

hearing was conducted. Thus, our statement of the facts is based upon the paper record before the trial court.

[4] During her later teenage years, Mother moved in with Intervenors. Also living in the home were the Intervenors' sons and another teenager, V.M. During 1997, Mother became pregnant by V.M. H.A. was born in May of 1998. Some years later, Mother married one of Intervenors' sons. They moved into a marital residence but did not take H.A. to live with them full-time. Subsequently, they divorced.[2]

[5] Intervenors claim that H.A. has resided with them almost exclusively since H.A.'s birth, with the maternal grandmother caring for H.A. for approximately one month during her infancy, and Mother having some two-day visits. According to Mother, she and Intervenors developed an informal shared custody arrangement and she did not relinquish H.A.'s physical care to Intervenors. Nonetheless, the first court order as to H.A.'s custody was entered on March 16, 2010. At that time, Intervenors were awarded physical custody of H.A. Mother was allowed supervised parenting time.[3]

---

[2] V.M. is now deceased.

[3] Mother had been diagnosed with some mental health disorders and was experiencing suicidal ideations. Reportedly, she had made threats to take H.A. to the home of a relative Mother had accused of molesting Mother. According to Mother's plan, she would tuck H.A. into bed and then leave and commit suicide. When H.A. awakened, she would be in the custody of the maternal relative and she would then experience and understand what Mother had experienced.

[6]     On July 16, 2013, the trial court restricted Mother's parenting time to therapeutic supervised parenting time with Family Connections. The trial court also ordered that Mother, H.A., and Intervenors participate in counseling sessions with Dr. Amanda Mayle. Initially, visits at Family Connections went well. However, H.A. began to report anxiety about the visits and she began to refuse to actively participate.[4]

[7]     During a November 2013 session in Dr. Mayle's office, H.A. was physically aggressive with Mother and Mother called the police, seeking to have H.A. placed in a juvenile facility away from the influence of Intervenors. Dr. Mayle recommended to the trial court that the parenting time sessions be suspended. According to Dr. Mayle, H.A.'s level of anger toward Mother had not decreased despite the extensive participation in services, and Dr. Mayle feared H.A. would exhibit self-destructive and physically aggressive behaviors in the future if the sessions continued. At the same time, therapist Trish Fox ("Fox") reported that sessions at Family connections were not going well. An order of December 10, 2013 suspended the therapeutic parenting time sessions.

[8]     On April 9, 2014, Mother filed a Motion for Modification of Custody. She also sought to have Intervenors held in contempt of court. After Mother's attorney

---

[4] H.A. has been diagnosed with a generalized anxiety disorder, attention-deficit disorder, and oppositional-defiant disorder.

was granted permission to withdraw, the trial court appointed an attorney for Mother at public expense. A Guardian Ad Litem ("GAL") was also appointed.

[9] In July of 2014, the GAL submitted her report to the trial court. She observed that Mother's personal therapist, Dr. Jason Cook, had opined that Mother was a suitable caregiver for H.A. The GAL recommended the appointment of a neutral custody evaluator to address possible parental alienation syndrome. On August 27, 2014, Mother filed a request for a court-appointed custody evaluator. Intervenors filed an objection. On September 23, 2014, Special Judge James Heuer issued an order stating that the request would "remain under advisement until the evidentiary hearing is conducted on December 17, 2014." (App. at 114.)

[10] On December 17, 2014, the parties submitted a stipulation waiving a hearing and providing that written briefs and exhibits would be submitted to the special judge. On February 27, 2015, the special judge denied the motion for custody modification. Intervenors were found not to be in contempt of court. H.A. was to continue in individual counseling sessions, and parenting time remained suspended. This appeal ensued.

# Discussion and Decision

## *Request for Custody Evaluator*

[11] The trial court was given reports from Dr. Mayle, Dr. Cook, the GAL, and Fox. Mother also requested a custody evaluator who was not privy to the

history of the case. After a telephonic hearing,[5] the request was taken under advisement until the scheduled hearing date.[6] However, on the scheduled hearing date, the parties filed their stipulation of agreement to submit written briefs and materials in lieu of testimony. Ultimately, the ruling upon the request for a custody evaluator was made as part of the order denying custody modification.

[12] Mother claims that the trial court abused its discretion by failing to appoint a custody evaluator to assist her court-appointed attorney in countering Dr. Mayle's opinion. According to Mother, although she relied heavily upon Dr. Cook's reports to support her request for custody, Dr. Cook was at a disadvantage because he had not examined H.A. or the Intervenors. Mother opines that a custody evaluator would have uncovered indications of systematic parental alienation efforts on the part of Intervenors.

[13] Mother does not point to authority suggesting that a litigant in a custody matter is entitled to a custody evaluator at public expense. Rather, she asserts that she was effectively stripped of all meaningful parental rights and thus suffered a deprivation of such magnitude that it is analogous to the deprivation of liberty experienced by criminal defendants. Even so, she acknowledges that

---

[5] Mother asserts that an unrecorded telephonic hearing was held on August 29, 2014. We have no record of this hearing. Assuming that evidence was presented, Mother has not elected to prepare a verified statement of the evidence pursuant to Indiana Appellate Rule 31.

[6] The trial court issued an order dated September 23, 2014 stating that the parties apparently lacked private funds for a custody evaluator, and the GAL had filed a "comprehensive report" with the court on July 30, 2014. (App. at 114.)

appointment of an expert for a criminal defendant is within the trial court's discretion and a defendant cannot simply rely upon a blanket statement of need. *See McConniel v. State*, 974 N.E.2d 543, 557-58 (Ind. Ct. App. 2012) (discussing the factors a trial court may consider when a defendant undertakes to make a specific showing of the benefits of an expert: whether the expert's services would bear on an issue for which expert opinion would be necessary or the request appears to be exploratory only, whether the services will likely answer a substantial question or merely an ancillary one, the severity of the penalty faced, the cost, and the complexity of the case).

[14] In this case, the trial court received expert advice from multiple sources. Dr. Mayle submitted eight status reports regarding the joint therapy sessions for Mother and H.A. conducted from July 2012 to November, 2013. Dr. Cook, who was Mother's therapist, and Fox, the therapist who supervised the therapeutic parenting sessions, each submitted reports. Mother insists that a new evaluator could have brought to light evidence of conduct on the part of Intervenors amounting to parental alienation. However, given the wealth of professional opinions already before the trial court, and a prior order of the trial court explicitly finding that Intervenors had not engaged in alienation conduct, this appears to be an exploratory wish. Mother has not demonstrated that the trial court abused its discretion by refusing her request for a custody evaluator.

## *Sufficiency*

[15] Where, as here, the trial court has entered findings and conclusions in accordance with Indiana Trial Rule 52, we employ a two-tiered standard of review. *In re Intervenorship of L.L.*, 745 N.E.2d 222, 227 (Ind. Ct. App. 2001), *trans. denied*. We first determine whether the evidence supports the findings, and then consider whether the findings support the judgment. *Id.* The trial court's findings and judgment will not be set aside unless they are clearly erroneous. *Id.* A judgment is clearly erroneous when it is unsupported by the conclusions drawn, and conclusions are clearly erroneous when they are not supported by findings of fact. *Id.* A judgment is also clearly erroneous when the trial court has applied the wrong legal standard to properly found facts. *Fraley v. Minger*, 829 N.E.2d 476, 482 (Ind. 2005). In reviewing the order being appealed, we will neither reweigh the evidence nor assess witness credibility. *In re M.B. and P.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. Rather, we will consider only the evidence that supports the trial court's judgment together with all reasonable inferences to be drawn therefrom. *Id.*

[16] The trial court made factual findings to the effect that: H.A. had exhibited anger and hostility toward Mother; Mother lacked appropriate skills to interact with H.A. when challenged; H.A. expressed a specific desire to discontinue visits; she exhibited physical and behavioral problems after visits (including "refusing to eat, indigestion, rages and rantings about her mother, exhaustion, and inability to sleep"); after suspension of visits, H.A.'s mood, grades, and

willingness to engage in social activities had improved; and Dr. Mayle recommended that H.A. not be forced into parental visits. (App. at 46.)

[17] Mother does not allege that the trial court's findings of fact are unsupported by the evidence. Rather, Mother contends that Intervenors failed to establish that it is in H.A.'s best interests to remain with Intervenors. Mother argues that no evidence was presented to show she was unfit, neglectful, or a physical danger to H.A. However, she concedes that H.A. could not be immediately placed in her physical custody "due to the state of their relationship." (Appellant's Br. at 23.) She requests placement with a "neutral family member" and involvement of "a disinterested and new therapist for a fresh look." (Appellant's Br. at 24.) As best we can discern Mother's argument, she contends that – absent a specific showing of her unfitness – she should be able to determine where H.A. resides and the best placement would be with a maternal relative.

[18] Our Indiana Supreme Court described in detail the legal framework applicable to custody disputes between a natural parent and a third party. *In re K.I.*, 903 N.E.2d 453, 462 (Ind. 2009). In particular, *K.I.* involved a parent's action to take custody of his daughter and in so doing terminate her grandparents' Intervenorship over her. First, the Court observed that custody modifications are reviewed for an abuse of discretion, with a preference for deference to our trial judges in family law matters. *Id.* at 457. The Court then recognized that, pursuant to Indiana Code section 31-14-13-6, child custody may not be modified unless the modification is in the best interests of the child, and there is

a substantial change in one or more of the factors that the court may consider under section 31-14-13-2 and, if applicable, section 31-14-13-2.5.[7] *Id.*

[19] However, the Court in *K.I.* clearly reiterated that the non-parent must overcome the "important and strong presumption" that a child's best interests are best served by placement with his or her natural parent. *Id.* at 459 (citing *In re Intervenorship of B.H.*, 770 N.E.2d 283, 287 (Ind. 2002)). The burden is one of clear and convincing evidence proving that the child's best interests are "substantially and significantly" served by the third-party placement. *Id.* The Court specifically rejected a "burden-shifting regime" placing the third party and the parent on a level playing field, as this would be inconsistent with long-standing State precedent. *Id.* at 460.

[20] Although the party seeking a change of custody must persuade the trial court that modification is in the best interests of the child and there is a substantial change in one of the afore-mentioned statutory factors, "these are modest requirements where the party seeking to modify custody is the natural parent of

---

[7]The non-exhaustive list of relevant factors includes (1) the age and sex of the child, (2) the wishes of the child's parents, (3) the wishes of the child, (4) the interaction and interrelationship of the child with the child's parents, siblings, and any other person who may significantly affect the child's best interest, (5) the child's adjustment to home, school, and community, (6) the mental and physical health of all individuals involved, (7) evidence of a pattern of domestic or family violence by either parent, and (8) evidence that the child has been cared for by a de facto custodian.

Section 2.5 is applicable only if the court finds by clear and convincing evidence that the child has been cared for by a de facto custodian. If so, in addition to the factors listed in section 2, the court shall consider (1) the wishes of the child's de facto custodian, the extent to which the child has been cared for, nurtured, and supported by the de facto custodian, the intent of the child's parent in placing the child with the de facto custodian, and the circumstances under which the child was allowed to remain in the custody of the de facto custodian (including whether placement was to allow the parent to seek employment, work, or attend school). Ind. Code § 31-14-13-2.5(b). Pursuant to subsection (d), the court shall award custody of the child to the de facto custodian if the court determines that it is in the best interests of the child.

a child who is in the custody of a third party." *Id.* The "parent comes to the table with a strong presumption" and the burden imposed by the statutory requirements is "minimal." *Id.* When the parent meets this "minimal burden," the third party must prove by clear and convincing evidence that the child's best interests are substantially and significantly served by placement with another person. *Id.* at 461 (citing *B.H.*, 770 N.E.2d at 287). If the third party carries the burden, custody of the child remains in the third party. *Id.* at 461. "Otherwise, custody must be modified in favor of the child's natural parent." *Id.*

[21] In short, in a custody dispute between a parent and a third party, even where the parent seeks to reobtain custody, the burden of proof that third-party custody is warranted is always upon the third party. *See id.* Thus, Mother correctly asserts that the Intervenors had to establish that H.A.'s best interests were substantially and significantly served by the continued placement outside Mother's home. However, contrary to Mother's suggestion, the Intervenors need not have specifically established Mother's unfitness to parent. *See In re B.H.*, 770 N.E.2d at 287 (observing that evidence of unfitness, acquiescence, or creation of a strong emotional bond is important, but clarifying that a trial court is not limited to these factors).

[22] Crucially, Mother is admittedly not able to take physical custody of H.A. Her insistence that H.A. would benefit from yet another third-party placement – late in her teenaged years – presents an invitation to reweigh the evidence of best interests. This Court is prohibited from reweighing the evidence. *Id.* at 288. Accordingly, we decline to do so.

# Conclusion

The trial court did not abuse its discretion by refusing to appoint a custody evaluator. There is sufficient evidence to support the custody decision.

Affirmed.

Baker, J., and Brown, J., concur.