## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 14 2015, 9:12 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| R. Patrick Magrath | C. Richard Marshall |
| Alcorn Sage Schwartz & Magrath, LLP | Columbus, Indiana |
| Madison, Indiana | |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Amanda B. Dobbs, | October 14, 2015 |
| *Appellant-Respondent,* | Court of Appeals Case No. 03A01-1502-DR-79 |
| v. | Appeal from the Bartholomew Superior Court |
| Bradley W. Dobbs, | The Honorable James D. Worton, Judge |
| *Appellee-Petitioner* | Trial Court Cause No. 03D01-1311-DR-6117 |

**Najam, Judge.**

## Statement of the Case

[1]     Amanda B. Dobbs ("Wife") appeals the trial court's judgment dissolving her marriage to Bradley W. Dobbs ("Husband") and awarding custody of their

minor child, S.D. ("the Child"), to Husband. Wife raises two issues for our review, which we consolidate and restate as whether the trial court's judgment awarding custody to Husband is clearly erroneous. We affirm.

## Facts and Procedural History

[2] Husband and Wife were married in May of 2010 and resided in Florida. In September of that year, Husband, who was serving in the United States Air Force, was deployed to Afghanistan. He returned to his home in Florida in June of 2012.

[3] At some point between January and June of 2012, Wife began using "spice," or synthetic marijuana. Tr. at 12. Husband did not want to be affiliated with someone who could jeopardize his military career, and he instructed Wife to stay with his mother in Indiana, which Wife did for about a week. After that week, Wife informed Husband that she was pregnant, and she returned to Florida. However, in October of 2012, following Husband's honorable discharge from the Air Force, Husband and Wife together moved to Seymour, Indiana.

[4] The Child was born in February of 2013. He had numerous ailments at birth and was listed as being in critical condition. As such, he was transferred from his hospital in Seymour to the intensive care unit at Riley Hospital ("Riley") in Indianapolis. The Child remained at Riley for three weeks, during which Wife "was suppose[d] to stay up there with him and . . . be with him." *Id.* at 17. However, Husband learned that Wife "was not there a lot of the time." *Id.*

Husband believed that the gravity of the Child's condition did not "register" with Wife; Husband thought she "couldn't grasp" that the Child "was in . . . mortal danger." *Id.* at 19. Instead, Wife "discuss[ed] alcohol . . . [a]ll the time." *Id.* at 20. She repeatedly told Husband that she could not wait to "have a drink." *Id.*

[5] Upon the Child's discharge from Riley in March of 2013, Wife assumed the role of the Child's primary caregiver while Husband worked.[1] Due to his ailments, the Child required special attention. For example, he required special medications administered daily, and, due to a neck condition, he required an adult to move his head for him. However, Wife was only "minimally" involved in that care. *Id.* at 24. And because she failed to move his head appropriately, the Child's head became deformed and he had to wear a corrective helmet for an extended time thereafter. Rather than helping the Child turn his head, Wife, "would utilize" the Child's condition "to hold [his] bottle in the bassinette in [such] a way that she could do whatever she wanted to do[] while he was feeding." *Id.* This "led to his head deformation." *Id.* When Husband confronted Wife about this behavior, she "dismiss[ed]" his concerns. *Id.* at 25.

[6] During this same time, Husband confronted Wife about her consumption of alcohol and pills. According to Husband, in the six or seven weeks following

---

[1] Husband and Wife lived with Husband's mother, who also worked during the day.

the Child's release from Riley, Wife "drank profusely" and would "get sloppy drunk." *Id.* at 26. He would find "fifths of Vodka hidden in drawers, under seats, in boots . . . wherever she could find a hiding spot." *Id.* Wife told Husband that she "can't quit" and that she did not want to quit. *Id.* at 27. Husband also discovered that Wife was "taking . . . prescription med[ication]s . . . that she had stolen . . . from [Husband's] ailing great-aunt." *Id.* And Husband caught Wife "smok[ing] pot." *Id.* at 29. When he confronted her, "[t]here was no real response, it was just a silent, you got me." *Id.*

[7] At some point Wife was involved in an automobile accident with the Child. At the time, Wife was "on something." *Id.* There is no evidence that the Child was injured in the accident.

[8] In May of 2013, Wife informed Husband that she had met someone online and she was leaving Husband. She left, and the Child stayed with Husband. About six months passed before Wife saw the Child again. In those six months, Wife did not pay any child support, help with any of the medical bills, or "provide anything to the [C]hild." *Id.* at 31. At one point she texted Husband and said she was coming to visit, but "she never showed up." *Id.*

[9] In November of 2013, Husband petitioned the court for the dissolution of the marriage and requested custody of the Child. Thereafter, Wife informed Husband that the Child might not be his biological child, and the Husband obtained a DNA test. That test confirmed that Husband was not the biological

father of the Child. As such, Wife requested the court to award her custody as the only known biological parent of the Child.

[10] After a fact-finding hearing, the court entered findings of fact and conclusions thereon in which it dissolved the marriage and awarded custody of the Child to Husband. In particular, the trial court found and concluded:

> 7. That the evidence herein clearly and convincingly demonstrates that [Husband] has been the only responsible caretaker of the child in that he has been the only person acting as a parent since the birth of the child.
>
> 8. That [Wife's] reluctance to participate with the child from birth, in fact abandoning the child for approximately six months from May through November of the first year of his life[,] and then only requesting custody of the child after she discovered that the child was not the biological child of the [Husband] is insignificant [sic].
>
> 9. The [Wife's] excessive drug use and drinking during the first two years of the child's life to the point of having to be searched for drugs and alcohol on a return to the home and the use of alcohol or drugs when transporting the child [sic].
>
> 10. That [Wife] has failed to pay child support for and on behalf of the child as ordered even though she was employed.
>
> 11. That the relationship between the [Husband] and the child is totally bonded as admitted by the [Wife] and that he has been the only financial support for the child since birth. The [Husband] was also the only party between the [Wife] and [Husband who] provided psychological, financial, or bonding support.
>
> 12. Further, that the relationship between the [Husband] and

his family with the child . . . would be totally disrupted in that the [Wife] intends to move the child from the local community to Indianapolis and that the [Husband's] parenting time or visitation with the child would be solely at her discretion. The granting of custody to the [Wife] would totally disrupt everything this child knows and every relationship this child has.

13. That it is in the best interests of the child that the [Wife] be granted parenting time as is age appropriate under the Indiana Parenting Time guidelines, which would not include overnight parenting time at this time.

14. The Court now further concludes that the [Wife's] statement relating to a serious drug addiction and alcohol addiction that immediately stopped on a certain date without professional intervention or help is without credibility. For example, the [Wife] states that she was stealing Valiums from a great-aunt's purse along with money, was overusing alcohol, marijuana, and spice[,] and that on July 14, 2014[, she] made a "miraculous" recovery and now only drinks on an occasion[al] basis is without credibility [sic].

15. The Court concludes based upon the findings of fact and the law . . . that it is in the best interests of the child and that [Husband] has shown by clear and convincing evidence that [he] should have custody of the minor child subject to age appropriate parenting time and payment of child support by the [Wife].

Appellant's App. at 41-43. This appeal ensued.

## Discussion and Decision

[11] Wife asserts on appeal that the trial court erred when it awarded custody of the Child to Husband because Husband is not the Child's biological father. As our supreme court has stated:

Despite the differences among Indiana's appellate court decisions confronting child placement disputes between natural parents and other persons, most of the cases generally recognize the important and strong presumption that the child's best interests are ordinarily served by placement in the custody of the natural parent. This presumption does provide a measure of protection for the rights of the natural parent, but, more importantly, it embodies innumerable social, psychological, cultural, and biological considerations that significantly benefit the child and serve the child's best interests. To resolve the dispute in the caselaw regarding the nature and quantum of evidence required to overcome this presumption, we hold that, before placing a child in the custody of a person other than the natural parent, a trial court must be satisfied by clear and convincing evidence that the best interests of the child require such a placement. The trial court must be convinced that placement with a person other than the natural parent represents a substantial and significant advantage to the child. The presumption will not be overcome merely because a third party could provide the better things in life for the child. *In a proceeding to determine whether to place a child with a person other than the natural parent, evidence establishing the natural parent's unfitness or acquiescence, or demonstrating that a strong emotional bond has formed between the child and the third person, would of course be important, but the trial court is not limited to these criteria. The issue is not merely the "fault" of the natural parent. Rather, it is whether the important and strong presumption that a child's interests are best served by placement with the natural parent is clearly and convincingly overcome by evidence proving that the child's best interests are substantially and significantly served by placement with another person. This determination falls within the sound discretion of our trial courts, and their judgments must be afforded deferential review.* A generalized finding that a placement other than with the natural parent is in a child's best interests, however, will not be adequate to support such determination, and detailed and specific findings are required.

In deference to the trial court's proximity to the issues, we disturb

the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. A challenger thus labors under a heavy burden, and must show that the trial court's findings are clearly erroneous. Child custody determinations fall squarely within the discretion of the trial court and will not be disturbed except for an abuse of discretion. Reversal is appropriate only if we find the trial court's decision is against the logic and effect of the facts and circumstances before the Court or the reasonable inferences drawn therefrom. We also note that, in reviewing a judgment requiring proof by clear and convincing evidence, an appellate court may not impose its own view as to whether the evidence is clear and convincing but must determine, by considering only the probative evidence and reasonable inferences supporting the judgment and without weighing evidence or assessing witness credibility, whether a reasonable trier of fact could conclude that the judgment was established by clear and convincing evidence.

*In re B.H.*, 770 N.E.2d 283, 287-88 (Ind. 2002) (emphasis added; quotation marks and citations omitted).

[12] In *In re B.H.*, our supreme court held that the following findings demonstrated "ample support for the judgment of the trial court in granting" a stepfather's guardianship petition:

the estranged relationship between the children and their father and his lack of any significant interaction with them since his 1991 separation from their mother; the failure of the father to stay current in paying his child support for the children; instances of abuse before the separation and the father's violent confrontation with the children's maternal aunt after the separation; the father's history of excessive drinking that resulted

in an arrest for driving while intoxicated in 1998 and a citation for public intoxication after he moved to Houston, Texas[,] in 1996; the stepfather's role as the only psychological father the children have known since December 1991; the children's connections with the community and the proximity of extended family provided by placement with the stepfather; the teenaged children's strong desire to remain in Indiana with the stepfather; the recommendations of the CASA report and the children's psychotherapist that it is in the best interests of the child to remain in Indiana with the stepfather; and the stepfather's role as the primary source of financial support for the children for the previous four years.

*Id.* at 288.

[13] Here, Wife asserts that the trial court's findings of fact and conclusions thereon were not supported by the evidence. As such, she continues, the court's judgment amounts to an impermissible general judgment awarding custody of the Child to Husband. We cannot agree with Wife's assessment.

[14] As in *In re B.H.*, here the trial court entered detailed findings to demonstrate that it was clearly convinced that Husband had proven that the Child's best interests were substantially and significantly served by placement with him rather than Wife. The most salient portions of the court's findings and conclusions are based on Husband's testimony at the fact-finding hearing. In accordance with Husband's testimony, the trial court found and concluded: that Husband was the only caretaker of the child who has actually "act[ed] as a parent"; that Wife was "reluctan[t] to participate with the [C]hild from birth, in fact abandoning the [C]hild for approximately six months from May through

November" of 2013; that Wife "only request[ed] custody . . . after she [had] discovered" that Husband was not the biological father; that Wife engaged in "excessive drug use and drinking" during the Child's life, including "when transporting the [C]hild"; that Wife "failed to pay child support"; that Husband's relationship with the Child "is totally bonded"; that Husband "has been the only financial support for the [C]hild since birth"; that Husband was "the only party" who "provided psychological, financial, or bonding support"; and that the Child's relationship with Husband's family and "everything this [C]hild knows and every relationship this [C]hild has" "would be totally disrupted" by granting the Wife custody. Appellant's App. at 41-43. And, on top of all of that, the court expressly found that Wife was "without credibility." *Id.* at 43. Thus, the trial court's assessment of the facts before it closely paralleled the findings our supreme court affirmed as "ample support" for third-party custody in *In re B.H.*

[15] Wife's arguments on appeal either focus on statements in the trial court's judgment that were irrelevant to the court's conclusion or amount to a request for this court to reweigh the evidence, which we will not do. We cannot say that the trial court's judgment is either clearly erroneous or an abuse of its discretion. We affirm the court's judgment.

[16] Affirmed.

Kirsch, J., and Barnes, J., concur.