Robin Ann PARKS, Appellant–
Petitioner,

v.

Michael GRUBE and Kathryn Grube,
Appellees–Intervenors.

No. 83A05–0911–CV–652.

Court of Appeals of Indiana.

July 7, 2010.

Publication Ordered July 20, 2010.

Steven L. Blakely, Acton & Snyder, LLP, Mark S. Christoff, Kapella, Christoff & Parker, Danville, IL, Attorneys for Appellant.

Bruce D. Aukerman, Mann Law Firm, Terre Haute, IN, Katherine A. Harmon, Cohen & Malad, LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

BAKER, Chief Judge.

Robin Ann Parks appeals the trial court's order granting custody of her three

children, G.G., S.G., and K.G. (collectively, "the Children") to Michael and Kathryn Grube (the Grube's). Specifically, Parks argues that there was insufficient evidence to support the trial court's conclusion that the Grube's proved by clear and convincing evidence that the best interests of the Children were served by placement with them. Finding the evidence sufficient, we affirm.

## FACTS

The marriage of Parks and Cary Grube was dissolved on March 23, 2006. Cary was awarded custody of their four children, B.G.,[1] born on January 22, 1990; G.G., born on May 6, 1993; S.G., born on December 22, 1997; and K.G., born on June 13, 2000. Parks was granted visitation according to the Indiana Parenting Time Guidelines. On April 4, 2007, the trial court approved Park's and Cary's agreed modification of custody, granting custody of B.G. to Parks. Cary maintained custody of the three younger children.

It is undisputed that despite being the noncustodial parent, Parks remained very active in the Children's lives. Parks exercised her parenting time and attended parent/teacher conferences, doctor's appointments, and school activities. Moreover, because Cary was a truck driver, Parks had physical custody of the Children several days and nights during the week and for one-half of the summer.

Cary unexpectedly died at his residence on October 26, 2008. G.G. found his father and called Parks, who arrived at Cary's residence a short time later. Parks did not stay very long before leaving the Children with the Grube's. The Grube's and the Children believe that Parks was intoxicated that night; Kathryn testified that Parks "was loud" and "very intoxicated." Tr. p. 286. The Children returned to Parks's residence several days later and S.G. and K.G. have remained with her; however, G.G. has lived with the Grube's since leaving Mother's residence on or around February 21, 2009.

Cary's Last Will and Testament requested that his parents, the Grube's, be granted custody of the Children. Cary's will was admitted to probate prior to filing of the action herein.

On November 7, 2008, Parks filed a Petition to Modify Custody, seeking custody of the Children. On November 10, 2008, the Grube's filed a Petition for Leave to Intervene and Petition for Modification of Custody.

Hearings on the parties' competing custody petitions were held on January 8, 2009, and July 23, 2009. During these hearings, evidence of Parks's history of alcohol abuse was presented. Specifically, Parks was arrested twice for driving under the influence of alcohol. In addition, Parks's former friend and neighbor, Milissa Woolwine, testified that she used to care for the Children because Parks was intoxicated and that Parks would "come home drunk with a stranger" during her parenting time with the Children. Tr. p. 194. Parks would "love on these men" to the point of "clothing being removed." Id. at 195. Similarly, Parks's former boyfriend, Kevin Hembree, testified that Parks was intoxicated "a hundred out of a hundred and twenty" days that she lived with him in 2007. Id. at 153.

A modified in camera interview was conducted with G.G. and S.G., during which they stated that Parks was intoxicated the day that their father died. Likewise, both stated that they believed that Parks was intoxicated at K.G.'s birthday party, which

---

1.  Because of B.G.'s age, custody of him is not at issue.

occurred after Cary had died. Since her father's death, S.G. has found a beer can in Parks's purse and a bottle of vodka under Parks's trailer, which she believed belonged to Parks.

Moreover, pages from S.G.'s and G.G.'s journals were presented. S.G. and G.G. wrote that when Parks is intoxicated, she yells at them, calls them names, and tells them that she does not want to see them again. S.G. also wrote that when she is on the school bus, she prays that her mother is not intoxicated when she gets home.

On October 14, 2009, the trial court entered findings of fact and conclusions of law and awarded custody of the Children to the Grubes. Parks now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

Parks' sole argument on appeal is that there was insufficient evidence to support the trial court's decision to award custody of the Children to the Grubes. Parks supports her argument by making several assertions, namely, that the Grubes failed to prove that she is unfit, that the trial court made erroneous findings regarding her alcohol use, and that the trial court relied solely on the wishes of the two older children.

■ This court reviews custody modifications for an abuse of discretion, granting deference to trial judges in family law matters. *Kirk v. Kirk,* 770 N.E.2d 304, 307 (Ind.2002). This court will neither reweigh the evidence nor assess witness credibility, and we will consider only the evidence that directly or by inference supports the trial court's judgment. *In re Guardianship of B.H.,* 770 N.E.2d 283, 288 (Ind.2002).

When, as here, the trial court enters findings of fact and conclusions of law, we apply a two-tiered standard of review.

*Stonger v. Sorrell,* 776 N.E.2d 353, 358 (Ind.2002). We must first determine whether the evidence supports the findings and then whether the findings support the judgment. *Id.* "Reversal is appropriate only if we find the trial court's decision is against the logic and effect of the facts and circumstances before the Court or the reasonably inferences drawn therefrom." *B.H.,* 770 N.E.2d at 288.

■ In custody disputes between natural parents and third parties, a presumption exists that it is in the best interest of the child to be placed in the custody of the natural parent. *K.I. ex rel. J.I. v. J.H.,* 903 N.E.2d 453, 458 (Ind.2009). Nevertheless, third parties can rebut this presumption by presenting clear and convincing evidence that the best interests of the child will be served by placing the child in the custody of the third party. *B.H.,* 770 N.E.2d at 287. The trial court must be convinced that placement with a third party represents a substantial and significant advantage to the child. *Id.* Indeed, the presumption that a child's best interests are served by placement with the natural parent may not be rebutted simply by showing that a third party could provide the better things in life for the child. *Id.*

■ Evidence establishing the natural parent's unfitness or acquiescence, or demonstrating that a strong emotional bond has formed between the child and the third person is important, but the trial court is not limited to these criteria. *Id.* Our Supreme Court has stated that the issue is not merely the 'fault' of the natural parent. Rather, it is whether the important and strong presumption that a child's interests are best served by placement with the natural parent is clearly and convincingly overcome by evidence proving that the child's best interests are substantially and

significantly served by placement with another person.

*Id.*

▓ Once the presumption in favor of the natural parent has been rebutted, "the trial court should then engage in a general best interest analysis, wherein it may, but is not required to, consider statutory best interest factors, if the proceeding is not specifically governed by such statutes." *Francies v. Francies,* 759 N.E.2d 1106, 1114 (Ind.Ct.App.2001) (footnote omitted). Indiana Code section 31–17–2–8 sets out a nonexhaustive list of best interest factors, including:

(1) The age and sex of the child.

(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more considerations given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

(A) the child's parent or parents;

(B) the child's sibling; and

(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

(A) home;

(B) school; and

(C) community

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) of this chapter.

As an initial matter, we observe that Parks spends much of her brief arguing that the Grube's failed to prove that she was unfit at the time of the hearing and that, as a result, the trial court's order is erroneous. But as discussed above, although evidence that a natural parent is unfit is important, it is not the only criteria that a trial court may consider. *B.H.,* 770 N.E.2d at 288. Accordingly, the Grubes were not required to prove that Parks is unfit.

## II. Parks' Alcohol Use

▓ Parks argues that the trial court erroneously concluded that she "has been treated for alcoholism and, by all accounts, continues to have an issue with alcohol abuse, affecting not only her mental health, but the mental and physical health and well-being of her children." Appellant's App. p. 32. Parks contends that this conclusion is erroneous because she was never treated for "alcoholism," there is no evidence that she has abused alcohol since Cary's death or that her alcohol abuse affects her mental health and the mental and physical health of the Children, and the trial court impermissibly relied on evidence that occurred prior to the last custody order in reaching its decision. Appellant's Br. p. 14–15.

### A. Treatment

Parks points out that she "underwent counseling for alcohol abuse subsequent to her second alcohol related arrest during 2005, but not for 'alcoholism,' " as determined by the trial court. *Id.* at 14 (quoting Appellant's App. p. 23). Regardless of the label used by the trial court, as discussed below, it is clear that the trial court was convinced that Parks had, and continues to have, a problem with alcohol. Parks' argument that we find error on this basis is a request that we engage in senseless hair-splitting, which we decline to do.

### B. Effect on the Children

▓ Parks contends that the trial court erroneously concluded that she continues

to abuse alcohol, affecting her mental health and the Children's health and well-being. Parks asserts that expert testimony is required to prove that her alcohol consumption has affected the Children's health and well-being.

Parks' former friend and neighbor, Milissa Woolwine, testified that she used to care for the Children because Parks was intoxicated and that Parks would "come home drunk with a stranger" during her parenting time with the Children. Tr. p. 194. Similarly, Parks' former boyfriend, Kevin Hembree, testified that Parks was intoxicated "a hundred out of a hundred and twenty" days that she lived with him in 2007. *Id.* at 153.

During the modified in cameral interview, G.G. and S.G. stated that Parks was intoxicated the day that their father died, and since his death, S.G. has found a beer can in Parks' purse and a bottle of vodka under Parks' trailer. Moreover, pages from S.G.'s and G.G.'s journal were presented on which they wrote that when Parks is intoxicated, she yells at them, calls them names, and tells them that she does not want to see them again.

Under these circumstances, we cannot agree with Parks that there was no evidence supporting the trial court's conclusion that her continuing alcohol abuse affects her mental health and the well being of the Children. Additionally, the cases that Parks cites to support her argument that expert testimony was necessary are inapposite, inasmuch as they involved either medical malpractice or personal injury. *See Singh v. Lyday*, 889 N.E.2d 342, 358–59 (Ind.Ct.App.2008) (concluding that expert testimony was necessary to prove causation in a case of alleged sexual misconduct by a psychiatrist), *trans. denied; Armstrong v. Gordon*, 871 N.E.2d 287, 292 n. 8 (Ind.Ct.App.2007) (recognizing that a plaintiff is required to present expert testimony to establish causation in complicated medical matters); *Daub v. Daub*, 629 N.E.2d 873, 877–78 (Ind.Ct.App.1994) (concluding that expert testimony was required to establish that the plaintiffs injury was caused by a fall).

Nevertheless, Parks points out that Hembree and Woolwine have not seen her since 2007 and that G.G. and S.G. admitted that they have not seen Parks drink alcohol since Cary's death. Likewise, Parks highlights the G's' admission that they have not seen her drink alcohol since Cary's death even though they believe that she was drinking at K.G.'s birthday party.

In essence, Parks' argument is a request that this court conclude, contrary to the trial court, that she was the most credible witness and that G.G., S.G., the G's, Hembree, and Woolwine were not truthful. This amounts to a request that we reweigh the evidence and judge the credibility of the witnesses, which we will not do.

### C. Facts Prior to the Last Custody Proceeding

Parks argues that the trial court should not have considered any evidence of facts that occurred before the last custody order entered on April 16, 2007,[2] including her prior alcohol-related arrests. Indiana Code section 31–17–2–21(c) provides that "[t]he court shall not hear evidence on a matter occurring before the last custody proceeding between the parties unless the

---

**2.** The parties dispute the correct date of the last custody proceeding. As stated in the text, Mother contends that the last custody proceeding was on April 16, 2007, but the Grandparents argue that the last custody proceeding occurred on March 23, 2006, because the April 16, 2007, order was an agreed stipulation and, therefore, not a custody proceeding. Because we conclude that the trial court did not impermissibly rely on Mother's history of alcohol abuse, we do not address this dispute.

matter relates to a change in the factors relating to the best interests of the child as described by section 8 . . . of this chapter."

A panel of this court addressed a similar issue in *Hanson v. Spolnik,* 685 N.E.2d 71 (Ind.Ct.App.1997). In *Hanson,* the mother argued that the trial court had impermissibly relied on evidence that had occurred before the last custody proceeding when it awarded father custody of their daughter, M.S. *Id.* at 77. Specifically, the mother argued that the trial court's decision was based on an incident in which mother's older daughter, A.L., had inappropriately touched M.S. *Id.* A panel of this court rejected mother's argument, concluding that the trial court's decision "was not based on the previous incident, but rather [the mother's] failure, since the divorce, to protect M.S. from further incidents by failing to provide appropriate counseling and discipline for A.L." *Id.*

In the instant case, the trial court observed that "[m]other has two (2) convictions for Operating A Vehicle While Intoxicated, one in 2003 and one in 2005," and concluded that "mother has been treated for alcoholism and, by all accounts, continues to have an issue with alcohol abuse, affecting not only her mental health, but the mental and physical health and well-being of her children." Appellant's Appendix Parks 22, 32. Additionally, the trial court observed that the "children clearly are bitter about their belief that their mother drinks too much and gets drunk," and that "Mother's drinking problem has been, and currently is, more detrimental to the children than she is willing to admit or understand." *Id.* at 26–27.

From the trial court's findings and conclusion, it is clear that the trial court considered Parks' history of alcohol abuse in the context of its *continuing effect* on the Children. Furthermore, the trial court considered the effects of Parks's alcohol abuse on her and the Children's mental health and their relationship. These are relevant considerations when determining a child's best interests. *See* I.C. § 31–17–2–8 (listing the "interaction and interrelationship of the child with . . . the child's parent or parents," and the "mental and physical health of all individuals involved," as factors for the court to consider when conducting a best interests analysis). Under these circumstances, we cannot conclude that the trial court impermissibly relied on Parks' previous alcohol-related arrests or her history of alcohol abuse.

### III. In Camera Testimony

■ Parks argues that "[u]ltimately, the trial court's determination that the presumption in favor of [Parks] was rebutted rests almost entirely upon the *in camera* testimony of the two oldest children,[3] who related their preference for living with the grandparents." Appellant's Br. Parks 15 (footnote added). Parks points out that a custody decision cannot rest entirely on the wishes of a child.

■ Parks is correct that it is "our longstanding rule that a change in the child's wishes, standing alone, cannot support a change in custody." *Williamson v. Williamson,* 825 N.E.2d 33, 40 (Ind.Ct. App.2005). However, as discussed above, the trial court considered Parks' alcohol use and its impact on the Children in its decision to grant custody to the G's. Consequently, we cannot agree with Parks that the trial court based its decision solely on the preferences of the two older children.

Moreover, Indiana Code section 31–17–2–8(3) states that "[t]he wishes of the child, with more consideration given to the child's wishes if the child is at least four-

---

3. Because of K.G.'s young age, she was not interviewed.

teen (14) years of age," is a relevant factor when determining a child's best interests. Therefore, the trial court did not err when it considered G.G.'s and S.G.'s preference to live with the G's.

The judgment of the trial court is affirmed.

FRIEDLANDER, J., and ROBB, J., concur.

### ORDER

Appellees, by counsel, have filed a Motion to Publish Memorandum Decision.

Having considered the matter, the Court FINDS AND ORDERS AS FOLLOWS:

1. Appellees' Motion to Publish Memorandum Decision is GRANTED.

BAKER, C.J., FRIEDLANDER, ROBB, JJ., concur.