# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 20 2016, 8:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark K. Phillips
Boonville, Indiana

ATTORNEY FOR APPELLEE

Boyd A. Toler
Petersburg, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

Z.C.,

*Appellant-Respondent,*

v.

J.K.,

*Appellee-Petitioner.*

September 20, 2016

Court of Appeals Case No.
63A04-1601-JP-211

Appeal from the Pike Circuit Court

The Honorable Joseph L. Verkamp, Judge

Trial Court Cause No.
63C01-1304-JP-33

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Respondent, Zackery G. Cannon (Father), appeals the trial court's Order, modifying the custody of his minor child, Z.C. (Child), in favor of Appellee-Petitioner, Jessica M. Kluemper (Mother).

We affirm.

## ISSUE

Father raises one issue on appeal, which we restate as follows: Whether the trial court abused its discretion by granting Mother sole physical custody of the Child and awarding Father parenting time in accordance with the Indiana Parenting Time Guidelines.

## FACTS AND PROCEDURAL HISTORY

Father is the natural parent of Z.C., born on February 28, 2012. On April, 1, 2013, a petition to establish a support order and admission and stipulation of paternity was filed. On April 5, 2013, the trial court adopted the parties' support order and granted physical custody of Z.C. to Mother, with Father receiving parenting time in accordance with the Indiana Parenting Time Guidelines. "Since the entry of [this] order, [Father] has in fact exercised more parenting time than set forth in the Indiana Parenting Time Guidelines including having the child overnight on Tuesdays and Thursdays of each week." (Appellant's App. p. 11). On August 8, 2013, when Z.C. was seventeen months old, the trial court entered an order, modifying child custody. The

order noted that "[t]here has been a significant change of circumstances" in that Mother intends to relocate to Nashville, Tennessee to attend culinary school. (Appellant's App. p. 11). Accordingly, the trial court ordered joint legal and physical custody of the Child, with each parent having Z.C. on alternating weeks.

[5] In December 2013 or January 2014, Mother moved back to Oakland City, Indiana from Nashville, Tennessee, because she could not "stand being away from [Z.C.] for a week at the time[.]" (Transcript p. 10). After Mother returned, she and Father reverted back to the custody arrangement followed prior to the August 2013 modification, *i.e.,* Mother had Z.C. on Monday and Wednesday, while Father had Z.C. on Tuesday and Thursday, with alternating weekends.

[6] Upon her return, Mother started living with her boyfriend, who has a daughter the same age as Z.C. Mother initially worked two jobs "maybe for a month" and then started a position with Vuteq, a supplier company for Toyota. (Tr. p. 81). After being employed by Vuteq for "eleven months," she found a position with Toyota in Princeton, Indiana, where she works the dayshift. (Tr. p. 82). Father lives with his fiancée in Petersburg, Indiana and has been employed by the same employer for the past four and a half years.

[7] When Z.C. turned three years old in February 2015, Mother wanted to enroll her in preschool. Despite their conversations, the parties could not reach an agreement where to enroll Z.C. Father wanted Z.C. to attend preschool in

Petersburg Indiana, while Mother wanted to enroll her at the preschool at Toyota. Because Princeton and Petersburg are in different time zones, Mother could not timely drop off and pick up Z.C. at the preschool in Petersburg.

[8] On April 30, 2015, Mother filed a petition to modify support and establish preschool. Three days after Mother filed the petition, Father sent her an email, alerting her that he would only communicate by email and no longer by phone or text. Father also advised her that he would impose the latest custody arrangement of alternating weeks, ordered by the trial court in August of 2013. On several occasions during the exercise of his parenting time, Father denied Mother the opportunity to speak with Z.C. by phone because Z.C. "did not want to talk to her." (Tr. p. 164). While Mother tried to accommodate Father regarding his time with Z.C. by allowing him to drop her off later or pick her up earlier to attend special events, Father was not so forthcoming with respect to Mother's special events and demanded a strict adherence to the parenting time schedule. Mother communicates often with Father's fiancée to resolve issues regarding Z.C. Although Mother emailed Father about his agreement to enroll Z.C. in dance classes, Father never responded.

[9] On May 20, 2015, Mother filed a petition to modify child custody and support, requesting primary physical custody of Z.C. On September 25, 2015, Father filed his petition to modify custody, parenting time, and child support. That same day, the trial court conducted an evidentiary hearing on the parties' petitions for modification. On November 24, 2015, the trial court issued its Order, instituting joint legal custody, with primary physical custody residing

with Mother, while Father has parenting time with Z.C. "at all reasonable times as agreed to by the parties but not less than those times set forth in the Indiana Parenting Time Guidelines." (Appellant's App. p. 20). On December 22, 2015, Father filed a motion to correct error, which was denied by the trial court on January 19, 2016.

Father now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

We review a custody modification for an abuse of discretion with a "preference for granting latitude and deference to our trial judges in family law matters." *In re Paternity of T.P.*, 920 N.E.2d 726, 730 (Ind. Ct. App. 2010) (quoting *In re Paternity of K.I.*, 903 N.E.2d 453, 457 (Ind. 2009)), *trans. denied*. We understand that appellate courts "are in a poor position to look at a cold transcript of the record, and conclude that the trial judge . . . did not properly understand the significance of the evidence, or that he should have found its preponderance or the inference therefrom to be different from what he did." *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002) (citation omitted). Accordingly, "[o]n appeal it is not enough that the evidence might support some other conclusion, but is must positively require the conclusion contended for by appellant before there is a basis for reversal." *Id*. Thus, "[t]he burden of demonstrating that an existing custody arrangement should be modified rests with the party seeking the modification." *In re Paternity of A.S.*, 948 N.E.2d 380, 386 (Ind. Ct. App. 2011).

This court will neither reweigh the evidence nor assess witness credibility, and we will consider only the evidence that directly or by inference supports the trial court's judgment. *Parks v. Grube*, 934 N.E.2d 111, 114 (Ind. Ct. App. 2010).

## II. *Modification of Custody*

Father contends that the trial court abused its discretion in modifying the custody determination from joint physical custody to granting Mother sole physical custody over their Child.

Following the establishment of paternity, "[t]he [trial] court may not modify a child custody order unless: (1) the modification is in the best interests of the child; and (2) there is a substantial change in one or more of the factors that the court may consider under [Indiana Code section 31-14-13-2].[1] Ind. Code § 31-14-13-6. These factors include:

(1) The age and sex of the child.

(2) The wishes of the child's parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

---

[1] Both parties cite Ind. Code §§ 31-17-2-21 and 31-17-2-8. These statutes govern the modification of custody in dissolution actions. Custody determinations in paternity actions are governed by Article 14 of Title 31. Although the parties' citations to Article 17 are incorrect, their argument is unaffected as the legal standards included in Article 14 are, in pertinent part, identical to those in Article 17.

(4) The interaction and interrelationship of the child with:

    (A) the child's parents;

    (B) the child's sibling; and

    (C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to home, school, and community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 2.5(b) of this chapter.

[14] The last custody modification entered by the trial court dates from August 8, 2013, and covered Mother's relocation to Nashville, Tennessee. At that point, the trial court found a significant change of circumstances based on Mother's intended relocation and modified custody by instituting joint legal and physical custody of the Child, with each parent caring for Z.C. on alternating weeks. Although Mother returned to Indiana approximately six months later, the trial court was not called upon to modify custody until now, despite the parents agreeing to revert to the custody arrangement in place prior to the August 8, 2013 modification.

[15]     First, we agree with the trial court that a significant change has occurred since its last order of August 8, 2013, which warrants a modification of custody. Specifically, Mother has returned to Indiana, is employed fulltime at Toyota, and is residing with her boyfriend in Oakland, Indiana.

[16]     The instant dispute commenced with a disagreement over Z.C.'s preschool. While Mother preferred Z.C. to attend the Toyota preschool due to its quality of instruction and the ease of her work schedule; Father wanted to enroll his daughter in a preschool close to his residence, where she was familiar with the other students. The evidence reflects that Z.C. is currently attending the Toyota preschool and is thriving. Father did not present any evidence indicating that the Toyota preschool is not qualified to serve the academic needs of Child or that the hours of the preschool are inconvenient and difficult to combine with his or his fiancee's work schedule.

[17]     However, the record is rife with indications that the parties are unable to communicate with each other. Father insists that Mother communicates with him by email and no longer by text or phone. Numerous reproaches were formulated by both parties: Mother claiming that Father did not allow her to talk to the Child during his parenting time, while Father presented allegations of fights and difficulties in the relationship between Mother and her boyfriend. Both parties presented evidence on how the other party interfered with his or her parenting time and whether the other parent accommodates special events planned for the Child which impede the parent's parenting time.

[18] Joint custody is difficult when the parents are unable to communicate effectively and almost always detrimental to the wellbeing of the child when they cannot. If we were to grant joint physical custody—as requested by Father—the parents' inability to cooperate will force the trial court to be the tie breaker in future disputes. There are times when a breakdown of communication between parents renders joint physical custody no longer in the best interests of the child. *See Hanson v. Spolnik*, 685 N.E.2d 71, 78 (Ind. Ct. App. 1997) (Although isolated acts of misconduct cannot serve as a basis for modification, a pattern of egregious behavior may, and the trial court should not give joint custody to "parents who have made child rearing a battleground."), *trans. denied*. In this case, the upbringing of Z.C. has become a battleground between Mother and Father, and joint physical custody would not be in her best interest.

[19] Based on our deferential standard of review, we affirm the trial court's modification of physical custody. However, we hasten to point out that the trial court took Father's evidence of his extended parenting time—above and beyond the Indiana Parenting Time Guidelines—into account and accommodated him by giving him parenting time "at all reasonable times as agreed to by the parties but not less than those times set forth in the Indiana Parenting Time Guidelines." (Appellant's App. p. 20). We sincerely hope, for Z.C.'s sake and wellbeing, that Mother and Father will be able to find an agreement on this extended parenting time and accommodate each other's special events.

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion by modifying custody of Z.C. and granting Mother sole physical custody.

Affirmed.

Bailey, J. and Barnes, J. concur