## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 06 2016, 8:06 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
| --- | --- |
| Yvette M. LaPlante | B. Michael Macer |
| Keating & LaPlante, LLP | Benjamin R. Aylsworth |
| Evansville, Indiana | Biesecker Dutkanych & Macer, LLC |
| | Evansville, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
| --- | --- |
| In the Matter of Paternity: | October 6, 2016 |
| Of the Unborn Child of C.C. | Court of Appeals Case No. 65A01-1603-JP-626 |
| | Appeal from the Posey Circuit Court |
| | The Honorable Jeffrey T. Shoulders, Special Judge |
| | Trial Court Cause No. 65C01-1107-JP-149 |

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Respondent, Cheyenne Vancamp (Mother), appeals the trial court's Order, granting primary physical custody of the minor child, E.O. (Child), to Appellee-Petitioner, Joseph O'Neil (Father).

We affirm.

## ISSUE

Mother raises one issue on appeal, which we restate as follows: Whether Father established a substantial change in circumstances warranting the modification in physical custody of the Child.

## FACTS AND PROCEDURAL HISTORY

Father is the natural parent of E.O., born on December 19, 2011. Prior to E.O.'s birth, on July 25, 2011, a paternity case was initiated and paternity was subsequently established on January 5, 2012. On September 26, 2012, the trial court entered an Agreed Entry, establishing Mother as the primary physical custodian, and instituting joint legal custody. Father was awarded parenting time pursuant to the Indiana Parenting Time Guidelines and ordered to pay child support in the amount of $100 per week. At that time, Father resided in Mt. Vernon, Indiana, while Mother initially lived in Indianapolis, Indiana. She subsequently moved to Ft. Wayne, Indiana in 2014.

After giving birth to E.O., Mother completed a degree in nursing. Between E.O.'s birth and the current proceedings, Mother has been employed by several

different organizations. However, at the time of the hearing, Mother had been employed by Parkview Health Network for the past year. She works three twelve-hour shifts from 3:00 p.m. until 3:00 a.m. per week. While Mother is at work, E.O. and her three younger half-siblings are cared for by a nanny in Mother's house. In early 2012, Mother began dating and became engaged, but never married, to a man who fathered her son. In October of 2014, after the relationship with her fiancé ended, Mother started to date and eventually married a man she had known since high school. A set of twins was born during the marriage, which subsequently ended in divorce. Throughout these relationships, Mother and Father were sporadically romantically involved.

[6] Prior to the birth of E.O., Father petitioned the court to establish paternity and has been involved in her life ever since. After returning to Mt. Vernon in 2012, Father has lived in the same residence and has held the same employment for two years prior to the date of the hearing. Father works seven days out of 14 and is off work by either 5:00 p.m. or 7:00 p.m., depending on his start time. At the time of the current proceedings, Father had adjusted his work schedule to only having to work two days in the week when he has parenting time with E.O. When Father needs a babysitter, his parents care for E.O. Father enjoys a close relationship with his parents, which is reflected in E.O.'s warm relationship with her grandparents. E.O. is also close to Father's sister, with whom she shares an interest in horses and other animals.

[7] On July 18, 2013, Mother filed a petition to modify parenting time. On August 19, 2013, Father filed an information for contempt and petition to modify,

asserting that Mother had moved twice since the Agreed Entry of September 26, 2012 without providing him notification pursuant to Ind. Code § 31-17-2.2-1, and requesting a change in custody. On December 23, 2013, the parties reached an agreement on the modification in parenting time and a minute entry in the chronological case history reflects that the parties would submit an agreed entry to the trial court for approval. On October 29, 2014, Father filed another petition for contempt and a supplemental petition to modify and request for emergency hearing, in which he again requested a change of custody. However, no parenting time agreement was entered until October 30, 2014, which established that the parties would alternate weeks parenting E.O. The agreement was silent as to any modification to the primary physical custodian. On December 15, 2014, Mother filed a motion to strike the agreed parenting time agreement entered the previous October. In a telephonic conference that same day, the trial court held that the October 30, 2014 order would remain in effect and that any additional matters would be heard on February 23, 2015.

[8] On January 20, 2016, the trial court conducted a hearing. At the hearing, both parties agreed that the current parenting time schedule of alternating weeks could not continue due to E.O.'s upcoming entry into kindergarten. At the close of the evidence, the trial court took the matter under advisement. On February 18, 2016, the trial court issued its ruling, concluding in pertinent part, that:

### I. Child Custody and Parenting Time

1.  The [c]ourt after considering all of the relevant statutory factors finds that the parties shall remain joint legal custodians of the parties' minor child.

2.  The [c]ourt finds that a change in the parenting time division has become necessary due to substantial changes which have occurred. Specifically, a change in parenting time is necessary because the current schedule of equal time is not feasible when the [C]hild begins school in the fall next school year due to the distance involved with Mother living in Ft. Wayne and Father living in Mt. Vernon.

3.  The [c]ourt after considering all of the relevant factors including those set out in I.C. [§] 31-17-2-8 finds that it is in the best interests of the child that [Father] shall have primary physical custody of the parties' minor child with Mother having parenting time pursuant to the Indiana Parenting Time Guidelines where distance is a factor.

4.  The [c]ourt finds that Mother has repeatedly changed residence and employment over the last few years whereas Father has maintained a more stable residence and employment.

5.  Further the [c]ourt finds that Mother has other children including newborn twins. Furthermore Mother regularly works through the night on 12 hour shifts, which requires her to place the [C]hild in the care of others overnight on a regular basis and for other significant periods of time. All of which makes it difficult for her to care for this [C]hild.

6.  Further the [c]ourt finds that the close relationship of the [C]hild with Father's family and the stability the [C]hild gets in his care were factors in the [c]ourt's decision.

> 7. Although the [c]ourt finds that this ruling may negatively impact the relationship with this [C]hild and her other siblings, this factor is outweighed by the overall best interests of the [C]hild and the stability that Father can provide.

(Appellant's App. pp. 10-12). On March 21, 2016, Mother filed a motion to stay appeal, which was denied after an evidentiary hearing.

Mother now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

We review a custody modification for an abuse of discretion with a "preference for granting latitude and deference to our trial judges in family law matters." *In re Paternity of T.P.*, 920 N.E.2d 726, 730 (Ind. Ct. App. 2010) (quoting *In re Paternity of K.I.*, 903 N.E.2d 453, 457 (Ind. 2009)), *trans. denied*. We understand that appellate courts "are in a poor position to look at a cold transcript of the record, and conclude that the trial judge . . . did not properly understand the significance of the evidence, or that he should have found its preponderance or the inference therefrom to be different from what he did." *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002) (citation omitted). Accordingly, "[o]n appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal." *Id.* Thus, "[t]he burden of demonstrating that an existing custody arrangement should be modified rests with the party seeking the

modification." *In re Paternity of A.S.*, 948 N.E.2d 380, 386 (Ind. Ct. App. 2011). This court will neither reweigh the evidence nor assess witness credibility, and we will consider only the evidence that directly or by inference supports the trial court's judgment. *Parks v. Grube*, 934 N.E.2d 111, 114 (Ind. Ct. App. 2010).

## II. *Modification of Custody*

[11] Mother contends that the trial court abused its discretion in modifying the custody determination by granting Father sole physical custody over their Child.

[12] Following the establishment of paternity, "[t]he [trial] court may not modify a child custody order unless: (1) the modification is in the best interests of the child; and (2) there is a substantial change in one or more of the factors that the court may consider under [Indiana Code section 31-14-13-2]."[1] Ind. Code § 31-14-13-6. These factors include:

> (1) The age and sex of the child.
>
> (2) The wishes of the child's parents.
>
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

---

[1] Both parties cite Ind. Code §§ 31-17-2-21 and 31-17-2-8. These statutes govern the modification of custody in dissolution actions. Custody determinations in paternity actions are governed by Article 14 of Title 31. Although the parties' citations to Article 17 are incorrect, their argument is unaffected as the legal standards included in Article 14 are, in pertinent part, identical to those in Article 17.

(4) The interaction and interrelationship of the child with:

    (A) the child's parents;

    (B) the child's sibling; and

    (C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to home, school, and community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 2.5(b) of this chapter.

[13] The initial custody modification was entered on September 26, 2012, establishing Mother as the primary physical custodian, with Father receiving parenting time. On August 19, 2013, Father filed a petition, requesting a change in custody. On October 29, 2014, Father filed another petition for contempt and a supplemental petition to modify and request for emergency hearing, in which he again requested a change of custody. On October 30, 2014, after the parties submitted an agreed entry, the parenting time schedule was changed to reflect the parents caring for E.O. on alternating weeks. The agreement was silent as to any modification in the physical custody

arrangement. After a hearing on January 20, 2016, the trial court granted primary physical custody to Father.

[14] Despite Mother's contention that the only decision requested by the parties related to parenting time in order to accommodate E.O.'s entry into kindergarten, the record reflects that a request for modification of physical custody had been made twice by Father and was pending before the trial court at the time of the hearing in the current proceedings. Accordingly, by its Order of February 18, 2016, the trial court issued a ruling on child custody and parenting time. We find no merit in Mother's claim that "the trial court's order clearly identified a change in circumstances that affects the division of parenting time, but fails to identify a change that would affect the custodial agreement." (Appellant's Br. p. 12). When interpreting the custody modification statute, our court explained that the statute does not require the trial court to specify which factor or factors has substantially changed. *Kanach v. Rogers*, 742 N.E.2d 987, 989 (Ind. Ct. App. 2001). Instead, the trial court "must 'consider' the statutory factors and find there has been a substantial change." *Id*.

[15] Here, under the heading "Child Custody and Parenting Time," the trial court first considered a change in parenting time "due to substantial changes" and then continued that based on "the best interests of the child" Father should be awarded primary physical custody. (Appellant's App. p. 10). "[C]onsidering all of the relevant factors including those set out in I.C. § 31-[14-13-2]," which addresses the statutory requirements for a custody modification, the trial court granted a change in custody due to Mother's frequent changes in residences and

employment, Mother's current hours of employment, and Father's family and stability. (Appellant's App. p. 10).

[16] While the trial court's order does not amount to an exercise in clarity, we agree that a significant change has occurred since the initial order, which warrants a modification of physical custody. Specifically, in light of E.O.'s age and entry into kindergarten, a schedule whereby both parents alternate weeks parenting E.O. is no longer feasible. *See In re Paternity of C.S.*, 964 N.E.2d 879, 884 (Ind. Ct. App. 2012) (child's readiness to enter kindergarten was a substantial change in circumstances warranting modification of child custody), *trans. denied*.

[17] Furthermore, the record supports that Mother has changed residences, employment, and relationships frequently in the last couple of years, resulting in instability for E.O. Mother neglected to inform Father of her changes in residence and he "always found out months later." (Transcript p. 82). Evidence was presented that Mother works long hours, including overtime, as a nurse, while E.O. is being cared for by nannies overnight in Mother's residence.

[18] On the other hand, Father is invested in his current residential area and community, with Father's family living in the vicinity. Father has stable employment, with flexible hours which allow him to spend a significant amount of time with E.O. When Father is not available to care for E.O., Father's parents and family members spend time with the Child. E.O.'s established relationship with Father's family result in an extended support network who all provide nurturing, support, and regularity for the Child.

Accordingly, Father is able to provide the child with predictability and stability as she becomes increasingly engaged academically and socially.

[19] Based on the evidence presented and E.O.'s pending entry into kindergarten, the trial court determined that a substantial change in circumstances has occurred, which made it in E.O.'s best interest to grant primary physical custody to Father. While the trial court was "impressed by the maturity in" the parties' professional lives and their parenting abilities in raising what "sounds like [] a wonderful child," ultimately, the balancing of the factors enumerated in I.C. § 31-14-13-2 weighed in favor of Father's stability with respect to home and family and a modification of physical custody was in E.O.'s best interests. (Tr. p. 123). Mindful of our deferential review, we affirm the trial court's order.

## CONCLUSION

[20] Based on the foregoing, we conclude that the trial court did not abuse its discretion by modifying custody of E.O. and granting Father sole physical custody.

[21] Affirmed.

[22] Bailey, J. and Barnes, J. concur